UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANNE DAMMARELL, et al.,

    Plaintiffs,

        v.

ISLAMIC REPUBLIC OF IRAN, et al.,

    Defendants.

Civil Action No. 01-2224  (JDB)

## MEMORANDUM OPINION

On March 29, 2005, this Court issued a Memorandum Opinion and Order in this case brought under the Foreign Sovereign Immunities Act ("FSIA") that addressed the causes of action that may be advanced against foreign states for their sponsorship of acts of terrorism and ordered plaintiffs to amend their complaint consistent with the opinion.  Plaintiffs have now filed a motion for clarification or reconsideration of certain aspects of the decision.  For the reasons set out herein, the Court affirms that plaintiffs must amend their Complaint to identify particular causes of action arising out of specific sources of law, but clarifies that this does not require plaintiffs to identify in the Complaint the particular state that provides each state law cause of action.  The Court also holds that plaintiffs in this action need not perfect service of their amended Complaint on defendants under 28 U.S.C. § 1608(a)(4), and upholds its conclusion that plaintiffs cannot state a cause of action against a foreign state under the Torture Victims Protection Act ("TVPA") or the federal common law.

**BACKGROUND**

Plaintiffs are more than eighty individuals and estates who commenced a damages action under the FSIA against the Islamic Republic of Iran ("Iran") and its Ministry of Intelligence and Security ("MOIS") for those entities' material support of the terrorist organization that carried out the 1983 bombing on the United States Embassy in Beirut, Lebanon.  Defendants failed to appear, and the Clerk of the Court entered default against them.  Following an evidentiary hearing, this Court issued findings of fact and conclusions of law for the claims of a representative group of the plaintiffs.[1]  See Dammarell v. Islamic Republic of Iran, 281 F. Supp. 2d 105 (D.D.C. 2003).  Thereafter, the D.C. Circuit issued a pair of decisions addressing the causes of action that may be brought against a foreign state or instrumentality pursuant to the FSIA.  See Acree v. Republic of Iraq, 370 F.3d 41 (D.C. Cir. 2004); Cicippio-Puleo v. Islamic Republic of Iran, 353 F.3d 1024 (D.C. Cir. 2004).  At this Court's request, plaintiffs briefed the viability of their claims in light of these decisions.

On March 29, 2005, this Court issued a Memorandum Opinion and Order that contained several holdings regarding the causes of action that can be asserted against a foreign state or instrumentality in the wake of Acree and Cicippio-Puleo.  This Court held, inter alia, that a plaintiff may bring any action against a foreign state or instrumentality through section 1606 of the FSIA that the plaintiff could bring against a private individual in like circumstances, Mem. Op. at 20-31; that a plaintiff may therefore state a claim against a foreign state in a section 1605(a)(7) case under state common law or statutory law, Mem. Op. at 31-41; that the District of

---

[1] The claims of the rest of the plaintiffs proceeded before Magistrate Judge John M. Facciola.

Columbia supplies the choice of law principles for a state law section 1605(a)(7) case, Mem. Op. at 32-34, and the application of those principles to an embassy bombing case will generally result in the state of domicile of the plaintiff providing the substantive rule of decision, Mem. Op. at 34-41; that a plaintiff cannot state a cause of action against a foreign state in a section 1605(a)(7) embassy bombing case directly under the federal common law, Mem. Op. at 41-51; and that a plaintiff may not bring a claim directly under the Flatow Amendment in light of <u>Cicippio-Puleo</u>, or under the Flatow Amendment or the Torture Victims Protection Act through section 1606, because Congress has indicated its desire not to allow a cause of action against foreign states through those particular statutes, Mem. Op. at 51-57. The Court also held that plaintiffs must identify in their complaint "a particular cause of action arising out of a specific source of law" under <u>Acree</u>, but that plaintiffs' complaint fell well short of this standard, because -- as in <u>Acree</u> -- the complaint only "alluded to the traditional torts . . . in their generic form" and "did not point to any other specific source in state, federal, or foreign law for their cause of action." Mem. Op. at 58-59 (quoting <u>Acree</u>, 370 F.3d at 59). The Court therefore ordered plaintiffs to amend their Complaint to identify a cause of action with the specificity required under <u>Acree</u>. The same day it decided <u>Dammarell</u>, this Court also issued opinions in Civil Action No. 02-558, <u>Salazar v. Islamic Republic of Iran</u>, and Civil Action No. 01-2244, <u>Owens v. Republic of Sudan</u>, that touched on many of the same issues addressed in the <u>Dammarell</u> opinion.

## ANALYSIS

Plaintiffs have now filed a motion for reconsideration and clarification, asking this Court: (i) whether it wishes plaintiffs, in an amended complaint, to identify the particular state that gives rise to their state law claims; (ii) to reconsider its conclusion that "a particular cause of action

arising out of a specific source of law" must be set out in an amended complaint at all; (iii) to conclude that they need not perfect formal service of an amended complaint on defendants under 28 U.S.C. § 1608; and (iv) to revisit its holdings that plaintiffs cannot state a claim under the TVPA and the federal common law.

## I. Specifying a Particular State in an Amended Complaint

Plaintiffs ask the Court to clarify whether they are expected to identify in their amended complaint the particular state that provides the cause of action for their state law claims. There is no such requirement in this Court's March 29, 2005, opinion, which explains that plaintiffs' Complaint is deficient because it fails to "specify whether these claims are based in state law (or some other source of law), or whether they arise out of the common law or a particular statute." Mem. Op. at 3. The opinion then instructs plaintiffs to amend their Complaint consistent with the opinion, *after which* they will have forty-five days to submit briefing on the choice of law question for each plaintiff's state law claims. Mem. Op. at 59. Thus, the opinion does not direct plaintiffs to include the choice of law determination in the Complaint itself. The Court is also unaware of any law, either in the FSIA setting or out, that would require such a result. Thus, this Court confirms that its March 29, 2005, opinion should not be read to require the identification in the Complaint of the particular state out of which each plaintiff's state law claims arise.

## II. Identifying a Particular Cause of Action Arising Out of a Specific Source of Law

Plaintiffs go further and ask the Court to reconsider its conclusion that they must "identify a particular cause of action arising out of a specific source of law" in an amended Complaint, arguing that they should be allowed to provide the necessary detail in memoranda to the Court rather than in formal pleadings. Here the Court must part ways with plaintiffs, for Cicippio-Puleo

and Acree were quite clear that they expected plaintiffs to identify their claims with particularity in an Amended Complaint.

The plaintiffs in Cicippio-Puleo had alleged claims against a foreign state for "intentional infliction of emotional distress and loss of solatium" that purported to arise "under section 1605(a)(7) and the Flatow Amendment." 353 F.3d at 1027. The court of appeals concluded that the Complaint failed to state a claim upon which relief could be granted, because "neither section 1605(a)(7) nor the Flatow Amendment, separately or together, establishes a cause of action against foreign state sponsors of terrorism." Id. However, the court went on to observe that the plaintiffs in that case may have been misled by the state of the law into "assuming that the Flatow Amendment afforded a cause of action against foreign state sponsors of terrorism." Id. at 1036. The Court therefore explained that it would "remand the case to allow plaintiffs an opportunity to *amend their complaint to state a cause of action under some other source of law*, including state law, as . . . amici have suggested." Id. at 1026. Thus, Cicippio-Puleo clearly required plaintiffs in an FSIA case to describe their causes of action with particularity in a complaint. Under the approach suggested by the plaintiffs in this case, amendment would have been entirely unnecessary in Cicippio-Puleo, because the plaintiffs had already stated generic tort claims in their complaint, and could simply have identified the particular cause of action and source of law in a motion or notice to the Court.[2]

---

[2] It might be suggested that an amendment was necessary in Cicippio-Puleo only because the plaintiffs had identified the wrong source of law in the complaint (and needed to replace it with the correct one). Among the many problems with this view is that it treats an FSIA complaint that provides no detail at all far more favorably (because no amendment is necessary, and it can be read to encompass every potential claim) than a complaint that provides some flawed detail on the source of law (where amendment is necessary to correct the flaw). There is no indication that Cicippio-Puleo contemplates this curious result.

Several months later, the D.C. Circuit in Acree reviewed a complaint against a foreign state that was "premised on section 1605(a)(7)" of the FSIA and alleged that the acts of torture detailed in the complaint "constituted 'traditional torts of assault, battery and intentional infliction of emotional distress.'" Acree, 370 F.3d at 44 (quoting Compl. ¶ 597). The court noted at the outset that it had already held in Cicippio-Puleo that section 1605(a)(7) cannot provide a cause of action against a foreign state. See id. at 58. The court then observed that plaintiffs had only alleged their tort claims "in their generic form." Id. "At oral argument," the court continued, "counsel for appellees gestured again toward generic common law torts, but generic common law cannot be the source of a federal cause of action." Id. (citation omitted). The court concluded:

> [A]s in any case, a plaintiff proceeding under the FSIA must identify a particular cause of action arising out of a specific source of law. . . . Here, appellees pointed to no source of liability other than § 1605(a)(7) and the Flatow Amendment. When pressed repeatedly at oral argument, appellees offered no coherent alternative. *We therefore find no cause to remand this case to the District Court in order to allow appellees to amend their complaint to state a cause of action under some other source of law.*

Id. (emphasis added). Thus, the court indicated again in Acree that the necessary detail for a cause of action under the FSIA would have to be provided in an amended complaint.

Plaintiffs contend that Acree only meant to suggest in this passage that an amended complaint would have been necessary to add factual allegations that could support a new cause of action. There is no reason at all to believe that this is what was the court meant. In fact, it is hard to imagine what additional factual allegations the complaint in Acree could possibly have required, seeing as how the complaint spanned more than six hundred paragraphs, and a portion of the complaint already alleged in great detail the facts necessary to support the generic torts of battery, intentional infliction of emotional distress, and so on. See Acree Compl. ¶ 597. The only

aspect of the complaint that could be thought to have been deficient in <u>Acree</u> was the absence of a particular and viable cause of action arising under a specific source of law.  It was that deficiency that the court highlighted in <u>Acree</u>, and it was plainly that deficiency that the court anticipated would need to be cured in an amended complaint.

      Seizing on the language in <u>Acree</u> that "*as in any case*, a plaintiff proceeding under the FSIA must identify a particular cause of action arising out of a specific source of law," <u>Acree</u>, 370 F.3d at 58 (emphasis added), plaintiffs argue that this information usually is not provided in a complaint in a non-FSIA case, and therefore should not be necessary in an FSIA case either.  However, there are limits on the generality with which a cause of action can be pled even under notice pleading in a non-FSIA case.  <u>See</u> <u>Modderno v. King</u>, 82 F.3d 1059, 1063 (D.C. Cir. 1996) ("[T]he complaint must, to survive a motion to dismiss, give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." (quotation omitted)); <u>see</u> <u>also</u> <u>Krieger v. Fadely</u>, 211 F.3d 134, 136 (D.C. Cir. 2000) (stating only that complaints "need not plead law or match facts *to every element of a legal theory"* (emphasis added))  An FSIA action raises the somewhat unusual prospect of a wide range of potential causes of action and sources of law for a single legal claim.[3]  The D.C. Circuit could reasonably have concluded that allowing a plaintiff to allege a vague tort claim without disclosing the exact nature of the claim, and forcing a foreign state to anticipate and defend against a variety of indeterminate legal claims, is neither a fair nor sensible result, particularly given the already sensitive nature of suits against foreign states for alleged sponsorship of terrorism.  At any rate, this Court need not analogize to the non-FSIA

---

    [3] For example, a single wrongful death claim at least conceptually could arise under state common law, state statutory law, the federal common law, international law, and numerous federal statutes.

-7-

context to speculate as to what the D.C. Circuit might have desired, because the court spelled out its wishes in Cicippio-Puleo and Acree -- plaintiffs must identify a particular cause of action and a specific source of law for their FSIA claims, and when they have not provided that particularity, they will need to amend their complaint accordingly.

As this Court explained in its earlier opinion, the most recent complaint in this case does not meaningfully differ from those found deficient in Cicippio-Puleo and Acree. The complaint discusses the FSIA, and then states claims in general terms for wrongful death and solatium, battery, intentional infliction of emotional distress, survival damages, economic damages, and punitive damages, without explaining whether these claims are anchored in state or federal law, or the common law or a particular statute. See Second Am. Compl. at pp. 53, 61, 62, 67, 69. In similar circumstances, two other judges have read Cicippio-Puleo and Acree to require the plaintiff to amend the complaint to identify a particular cause of action and source of law for each claim. See Simpson v. Socialist People's Libyan Arab Jamahiriya, No. 00-1722, 2005 WL 517850, at *1 (D.D.C.); Welch v. The Islamic Republic of Iran, No. 01-863, 2004 WL 2216534, at *4 (D.D.C.) (Kay, M.J.). This Court sees no reason to deviate from the result contemplated in Cicippio-Puleo and Acree, required in Simpson and Welch, and ordered in this Court's March 29, 2005, Memorandum Opinion. Accordingly, this Court affirms that plaintiffs must identify a particular cause of action arising out of a specific source of law in an amended complaint.

### III.   Service of an Amended Complaint Under 28 U.S.C. § 1608.

In its March 29, 2005, opinion in Salazar v. Islamic Republic of Iran, this Court noted the absence of clear law on whether a plaintiff must formally serve an amended complaint on a foreign state or instrumentality pursuant to 28 U.S.C. § 1608, and invited the plaintiff in that case

(and later the plaintiffs in this case and in <u>Owens v. Republic of Sudan</u>) to submit briefing on the subject.  This Court has reviewed the parties' submissions as well as the relevant law, and holds today that section 1608 is inapplicable in the setting where the defendant foreign state has failed to appear, and is therefore in default, and where an amendment does not add any claims but instead clarifies existing claims.

Several considerations lead the Court to this result.  First, the text of section 1608 appears to anticipate formal service only of an initial pleading.  The statute provides that "[s]ervice in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state" in accordance with four enumerated methods (to be attempted in sequence).  28 U.S.C. § 1608(a)(1)-(a)(4).  For each of the listed methods, the statute only requires the delivery of "a copy of the summons and complaint" and in some instances also a "notice of suit."  <u>Id.</u>  The text of the statute therefore contemplates service only of the complaint that initiates a suit (when a summons normally issues), along with perhaps a complaint later in the case that adds a foreign state as a defendant for the first time and therefore would also require issuance of a summons.

The legislative history of the provision confirms this reading of the statute.  The House Report for the FSIA explains that section 1608 is designed to "insure that private persons have adequate means for commencing a suit against a foreign state to seek redress in the courts"; distinguishes section 1608 from the prevailing means at the time of the enactment of the statute for "attempting to commence litigation against a foreign state"; and notes that the "notice of suit" that must be served in the fourth method is "designed to provide a foreign state with an introductory explanation of the lawsuit, together with an explanation of the legal significance of

the summons, complaint, and service." H.R. Rep. No. 94-1487, at 11, 23-25, available at 1976 U.S.C.C.A.N. 6604, 6609-10, 6622-25.  These statements suggest that section 1608 is concerned with service of the initial complaint that commences a lawsuit, and not with ensuing pleadings or papers.

At least as to the defendants in this case, dispensing with the requirement of formal service under section 1608 is also consistent with Federal Rule of Civil Procedure 5(a), which provides that "[n]o service need be made on parties in default for failure to appear except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in Rule 4."  Fed. R. Civ. P. 5(a).  The defendants in this case are in default, and this Court does not believe that the addition to a complaint of the detail required in Acree constitutes the assertion of a "new or additional claim[]" within the meaning of Rule 5(a).  Therefore, service of the amended complaint in the circumstances of this case is unnecessary under Rule 5(a).  See Hill v. Republic of Iraq, 175 F. Supp. 2d 36, 38 & n.2 (D.D.C. 2001) (appearing to allow filing of amended complaint without formal service after default).

Finally, the Court notes that formal service under section 1608 -- which often entails the translation of a filing into a foreign language, mailing of the filing by the Clerk of the Court, service of the filing on the foreign state by the State Department through diplomatic process, and a long delay in the proceedings while all of this transpires -- places a significant burden on plaintiffs, the executive branch, and the Court.  Expanding the reach of section 1608 to situations outside the four corners of the statute would come at a serious cost.  The Court does not rule out the possibility that additions to a complaint could be so substantial that the amended complaint must be served on a foreign state under section 1608 even though the foreign state is not being

added to the complaint for the first time. However, when default has been entered against a foreign state defendant, and the amended complaint does little more than provide the particularity required by Acree, there is no requirement that the plaintiff serve the amended complaint pursuant to section 1608.[4]

### IV.     Causes of Action Under the Federal Common Law and the TVPA

Lastly, plaintiffs ask this Court to reconsider its conclusion that they cannot state a cause of action under the federal common law or the TVPA. This Court finds plaintiffs' position unpersuasive for substantially the reasons explained at length in its March 29, 2005, Memorandum Opinion. The Court will not repeat those reasons here, although it will take a moment to address the principal arguments that plaintiffs raise in response to the Court's reasoning.

First, plaintiffs contend that the reservations this Court expressed with regard to the creation of a federal common law rule are misplaced, because the courts would not be "creating" federal common law, but instead discovering federal common law that "has long existed" in a "somewhat dormant state." Pl. Mot. at 19. Even supposing that there is a sound conceptual distinction between "creating" the federal common law on the one hand and "discovering" dormant law on the other, see Sosa v. Alvarez-Machain, 12 S. Ct. 2739, 2769 (2004) (Scalia, J., concurring), it is difficult to see how it is a distinction of any relevance to the issue here. The basis for this Court's holding that the federal common law does not give rise to a cause of action

---

[4] This result appears to be consistent with the informal position of the State Department as it has been explained to the plaintiffs in Salazar and Owens (and related by those plaintiffs to this Court). This position seems to be that the State Department is willing to serve amended complaints through diplomatic channels under section 1608, but that the Department applies a "character of the document" test to determine whether service under section 1608 is necessary.

against a foreign state under the FSIA was not some vague unease with the creation of a federal rule of decision, but instead a long line of recent Supreme Court and appellate decisions narrowing the role of the federal common law to the most exceptional of circumstances, and stating categorically that the mere desire for "uniformity" in the law or the existence of a "uniquely federal interest" in the subject of the litigation will not permit resort to the federal common law in the absence of a significant conflict between the state and federal schemes.  See, e.g., O'Melveny & Myers v. FDIC, 512 U.S. 79, 86 (1994); Boyle v. United Techs. Corp., 487 U.S. 500, 507 n.3 (1988); Bettis v. Islamic Republic of Iran, 315 F.3d 325, 333 (D.C. Cir. 2003); Woodward Governor Co. v. Curtiss Wright Flight Sys., Inc., 164 F.3d 123, 127 (2d Cir. 1999). Plaintiffs do not even attempt to identify any conflict between state tort law and claims under the FSIA.  Nor do they offer any serious response to this well-established law.

Second, plaintiffs argue that in declining to recognize a cause of action against a foreign state under the TVPA, this Court allowed the intent of Congress in 1992 (when Congress enacted the TVPA and clearly expressed its intent that the TVPA not apply to foreign states) to prevail over the intent of Congress in 1996 (when it enacted section 1605(a)(7) of the FSIA).  This argument can succeed only if there is some evidence that the intent of Congress in 1996 was to extend the TVPA to foreign states.  Plaintiffs do not identify any such evidence.  Plaintiffs cite evidence that Congress was *aware* of the TVPA when it enacted the FSIA, but this unremarkable fact makes it all the more telling that Congress gave no indication whatsoever that it understood itself to be *expanding* the TVPA to create a new federal cause of action for torture and extrajudicial killing against a foreign state.  As this Court explained in its March 29, 2005 opinion, there is simply no reason to believe that in enacting a jurisdictional provision in 1996

(section 1605(a)(7)), Congress intended to reverse its 1992 position that the TVPA does not create a cause of action, through the silent operation of a statute passed twenty years earlier (section 1606). Accordingly, this Court affirms that there is no cause of action against a foreign state under the TVPA.

## **CONCLUSION**

For the foregoing reasons, plaintiffs' motion for clarification and reconsideration will be granted in part and denied in part. A separate order will issue.

/s/ John D. Bates<br>
JOHN D. BATES<br>
United States District Judge

Dated:   May 12, 2005


Copy to:

Stuart Henry Newberger
Crowell & Moring, L. L. P.
1001 Pennsylvania Avenue, Northwest
Washington, D. C.  2004-2595
202-624-2649 (telephone)
202-628-5116 (fax)
Attorney for Plaintiffs