# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ANNE DAMMARELL,**
Individually on her own behalf,
2853 Ontario Road, N.W., Apt. 602
Washington, DC  20009;

**ESTATE OF ROBERT AMES,**
By Yvonne Ames, Administrator,
2431 CSI Farm Road
Hickory, NC  28602;

**YVONNE AMES,**
Individually on her own behalf,
2431 CSI Farm Road
Hickory, NC  28602;

**ANDREW AMES,**
Individually on his own behalf,
4500 Lake Park Drive
Acworth, GA  30101;

**KEVIN AMES,**
Individually on his own behalf,
1523 10th Street Place, N.W.
Hickory, NC  28601;

**KRISTEN AMES BROWN,**
Individually on her own behalf,
1916 Warner Road
Ft. Worth, TX  76110;

**KAREN HALE,**
Individually on her own behalf,
2815 Saddlebrook Glen Drive
Cumming, GA  30041;

**ADRIENNE OPDYKE,**
Individually on her own behalf,
333 Third Avenue, N.W.
Hickory, NC  28601;

**THIRD AMENDED COMPLAINT
FOR COMPENSATORY DAMAGES
PURSUANT TO THE FOREIGN
SOVEREIGN IMMUNITIES ACT, AS
AMENDED**

**Civil Action No. 1:01-cv-02224 (JDB)**

**ESTATE OF THOMAS BLACKA,**
By Beryl Blacka, Personal
Representative,
3938 McKinley Street, N.W.
Washington, DC  20015;

**BERYL BLACKA,**
Individually on her own behalf,
3938 McKinley Street, N.W.
Washington, DC  20015;

**JANE BLACKA,**
Individually on her own behalf,
3938 McKinley Street, N.W.
Washington, DC  20015;

**THOMAS H. BLACKA,**
Individually on his own behalf,
3938 McKinley Street, N.W.
Washington, DC  20015;

**ESTATE OF PHYLISS FARACI,**
By Philip Faraci, Administrator,
1220 Second Street
Monessen, PA  15062;

**PHILIP FARACI,**
Individually on his own behalf,
1220 Second Street
Monessen, PA  15062;

**ESTATE OF TERRY GILDEN,**
By Mary Gilden, Administrator,
6928 Brockwood Street
Fayetteville, NC  28314;

**MARY GILDEN,**
Individually on her own behalf,
6928 Brockwood Street
Fayetteville, NC  28314;

**JOHN GILDEN**,
Individually on his own behalf,
3901 N.W. Cascade
East Wenatchee, WA  98802;

**LORRAINE GILDEN**,
Individually on her own behalf,
3901 N.W. Cascade
East Wenatchee, WA  98802;

**TERESA GILDEN**,
Individually on her own behalf,
747 West 5th Street
Cheney, Washington  99004;

**ESTATE OF KENNETH HAAS**,
By Gene Haas, Executor,
405 Leisure Drive
Huron, OH  44839;

**GENE HAAS**,
Individually on his own behalf,
405 Leisure Drive
Huron, OH  44839;

**ALEXANDER HAAS**,
Individually on his own behalf,
11310 Norris Drive
Wheaton, MD  20902;

**ALISON HAAS**,
Individually on her own behalf,
22 Somerton Place
Columbia, S.C.  29209;

**ESTATE OF FRANK JOHNSTON**,
By Arlette Johnston, Administrator,
1609 Longfellow Street
McLean,  VA 22101;

**ARLETTE JOHNSTON**,
Individually on her own behalf,
1609 Longfellow Street
McLean, VA  22101;

**ESTATE OF JAMES LEWIS,**
By Antoinette F. Lewis, 11440
Turtleback Lane, San Diego, CA  92127,
and Gregory J. Rupert, 8484 Westpark
Drive, McLean, VA  22102, Co-
Administrators;

**ESTATE OF MONIQUE LEWIS,**
By Antoinette F. Lewis, 11440
Turtleback Lane, San Diego, CA  92127,
and Gregory J. Rupert, 8484 Westpark
Drive, McLean, VA  22102, Co-
Administrators;

**ANTOINETTE LEWIS,**
Individually on her own behalf,
11440 Turtleback Lane
San Diego, CA  92127;

**ESTATE OF WILLIAM MCINTYRE,**
By Mary Lee McIntyre, Executrix,
1510 Mintwood Drive
McLean, VA  22101-4113;

**MARY LEE MCINTYRE,**
Individually on her own behalf,
1510 Mintwood Drive
McLean, VA  22101-4113;

**MARGARET MCINTYRE**
**MATTEUCCI,**
Individually on her own behalf,
4416 Ponderosa Avenue, N.E.
Albuquerque, NM  87110;

**ANDREW MCINTYRE,**
Individually on his own behalf,
8033 12th Street, N.W.
Seattle, WA  98117;

**JULIE MCINTYRE,**
Individually on her own behalf,
1101 Richmond Drive, N.E.
Albuquerque, NM  87106;

**ESTATE OF ROBERT MCMAUGH**,
By Earl McMaugh, 308 North Oak
Street, Falls Church, VA  22046, and
Annie Mullins, 13825 Mt. View Drive
Spotsylvania, VA  22553, Co-
Administrators;

**EARL MCMAUGH**,
Individually on his own behalf,
308 North Oak Street
Falls Church, VA  22046;

**ANNIE MULLINS**,
Individually on her own behalf,
13825 Mt. View Drive
Spotsylvania, VA  22553;

**CHERIE JONES**,
Individually on her own behalf,
201 Happy Creek Road
Locust Grove, VA  22508;

**MICHAEL MCMAUGH**,
Individually on his own behalf,
109 Conner Lane
Bedford, VA  24523;

**TERESA HASSAN**,
Individually on her own behalf,
3931 Clares Court
Fairfax, VA  22301;

**ESTATE OF WILLIAM SHEIL**,
By John Sheil, Administrator,
6070 Beirut Place
Dulles, VA  20189-6070;

**JOHN SHEIL**,
Individually on his own behalf,
6070 Beirut Place
Dulles, VA  20189-6070;

**LAURA MONDAY**,
Individually on her own behalf,
10731 Lloyd Drive, No. 4
Worth, IL  60482;

**CAROLE J. PERSON**,
Individually on her own behalf,
20074 Colchester Road
Purcellville, VA  22132;

**CHERYL PIENKOWSKI**,
Individually on her own behalf,
8924 Beacon Court
Chicago, IL  60477;

**ELIZABETH M. SHEIL**,
Individually on her own behalf,
11245 S. Harlem Avenue
Apartment B-10
Worth, IL  60482;

**JAMES M. SHEIL**,
Individually on his own behalf,
Shamrock Fields Farm
381 Bacon Run Road
Mount Morris, PA  15349;

**ESTATE OF WILLIAM SHEIL, Jr.**,
By Paul G. Taylor, Esq., Estate
Representative
134 West Burke Street
Martinsburg, WV 25401

**JUDITH S. TAFT**,
Individually on her own behalf,
166 Graystone Trace
Suffolk, VA  23435;

**ESTATE OF JANET LEE STEVENS**,
By Jo Ann Stevens, Administrator,
1074 Powell Wright Road
Marietta, GA  30066;

**JO ANN STEVENS,**
Individually on her own behalf,
1074 Powell Wright Road
Marietta, GA  30066;

**HAZEN HADLEY STEVENS,**
Individually on his own behalf,
12465 Highway 18
Pine Mountain, GA  31822;

**ESTATE OF HAZEN STEVENS,**
By Scott Stevens, Administrator,
260 Cotton Field Court
Alpharetta, GA  30022;

**SCOTT C. STEVENS,**
Individually on his own behalf,
260 Cotton Field Court
Alpharetta, GA  30022;

**ESTATE OF ALBERT VOTAW,**
By Estera Votaw, Executrix,
2129 Florida Avenue, N.W., Apt. 404
Washington, DC  20008;

**ESTERA VOTAW,**
Individually on her own behalf,
2129 Florida Avenue, N.W., Apt. 404
Washington, DC  20008;

**CATHERINE VOTAW,**
Individually on her own behalf,
29 Aberdale Road
Bala Cynwyd, PA  19004;

**CLAIRE VOTAW,**
Individually on her own behalf,
9533 Jomar Drive
Fairfax, VA  22032;

**MARIANNE VOTAW,**
Individually on her own behalf,
252-A Stribling Avenue
Charlottesville, VA  22903-2901;

**SUSAN WEST,**
Individually on her own behalf,
c/o Catherine Votaw
29 Aberdale Road
Bala Cynwyd, PA  19004

**GREGORY B. VOTAW,**
Individually on his own behalf,
6717 Loring Court
Bethesda, MD  20817;

**RAYFORD BYERS,**
Individually on his own behalf,
904 Northwest Mickelgate Blvd.
Lawton, OK  73505;

**DON CHUBB,**
Individually on his own behalf,
8712 Center Road
Springfield, VA  22152;

**ROBERT ESSINGTON,**
Individually on his own behalf,
1604 E. Jefferson Court
Sterling, VA  20164;

**DENNIS FOSTER,**
Individually on his own behalf,
4600 Flower Valley Drive
Rockville, MD  20853;

**BRIAN KORN,**
Individually on his own behalf,
3704 Conlin Avenue
Evansville, IN  47714;

**FAITH LEE,**
Individually on her own behalf,
8214 South Justine Street
Chicago, IL  60620;

**CHARLES LIGHT,**
Individually on his own behalf,
3800 Overview Drive
Fredericksburg, VA  22408;

**JACQUES MASSENGILL,**
Individually on his own behalf,
1208 Rue Vieux Carre
Huntsville, AL  35802;

**DUNDAS MCCULLOUGH,**
Individually on his own behalf,
6120 Dhaka Place
Dulles, VA  20189;

**REBECCA MCCULLOUGH,**
Individually on her own behalf,
P.O. Box 375
Falmouth, MA  02256

**RAYMOND MILLER,**
Individually on his own behalf,
6086 Swallow Drive
Lakeland, FL  33809-5694;

**CATHERINE NYLUND,**
Individually on her own behalf,
734 West 214th Street, Apt. 5
Torrance, CA  90502;

**ESTATE OF ROBERT PEARSON,**
By George Saunders, Executor,
3096 Comfort Road
New Hope, PA  18938;

**DOROTHY PECH,**
Individually on her own behalf,
216 Locust Street, Apt. 131
Vienna, VA  22180;

**DANIEL PELLEGRINO,**
Individually on his own behalf,
3210 Kingston Place
Dulles, VA  20189-3210;

**LEO PEZZI**,
Individually on his own behalf,
2020 Meadow Springs Drive
Vienna, VA  22182;

**JOHN M. REID**,
Individually on his own behalf,
133/9 Ban Suan Sukumvit
Onnuch Soi 46, Suan Luang
Bangkok 10250
Thailand;

**BETH SAMUEL**,
Individually on her own behalf,
7322 Pepper Ridge Road
Corpus Christi, TX  78413;

**RONALD KURT SHAFER**,
Individually on his own behalf,
302 East Sycamore
Chatsworth, IL  60291;

**RONNIE TUMOLO**,
Individually on his own behalf,
905 North Amelia Street
Sterling, VA  20164;

**ANDREW WARTELL**,
Individually on his own behalf
1905 Windsor Hunt Court
Vienna, VA  22182;

               Plaintiffs,

    v.

**THE ISLAMIC REPUBLIC OF
IRAN**,
Ministry of Foreign Affairs
Khomeini Avenue
United Nations Street
Tehran, Iran,

And

**THE IRANIAN MINISTRY OF
INFORMATION AND SECURITY,**
Pasdaran Avenue
Golestan Yekon
Tehran, Iran,

                    Defendants.

Plaintiffs Anne Dammarell; Estate of Robert Ames, by Yvonne Ames, Administrator; Yvonne Ames; Andrew Ames; Kevin Ames; Kristen Ames Brown; Karen Hale; Adrienne Opdyke; Estate of Thomas Blacka, by Beryl Blacka, Personal Representative; Beryl Blacka; Jane Blacka; Thomas H. Blacka; Estate of Phyliss Faraci, by Philip Faraci, Administrator; Philip Faraci; Estate of Terry Gilden, by Mary Gilden, Administrator; Mary Gilden; John Gilden; Lorraine Gilden; Teresa Gilden; Estate of Kenneth Haas, by Gene Haas, Executor; Gene Haas; Alexander Haas; Alison Haas; Estate of Frank Johnston, by Arlette Johnston, Administrator; Arlette Johnston; Estate of James Lewis, by Antoinette Lewis and Gregory Rupert, Co-Administrators; Estate of Monique Lewis, by Antoinette Lewis and Gregory Rupert, Co-Administrators; Antoinette Lewis; Estate of William McIntyre, by Mary Lee McIntyre, Executrix; Mary Lee McIntyre; Margaret McIntyre Matteucci; Andrew McIntyre; Julie McIntyre; Estate of Robert McMaugh, by Earl McMaugh and Annie Mullins, Co-Administrators; Earl McMaugh; Annie Mullins; Cherie Jones; Michael McMaugh; Teresa Hassan; Estate of William Sheil, by John Sheil, Administrator; John Sheil; Laura Monday; Carole Person; Cheryl Pienkowski; Elizabeth Sheil; James M. Sheil; Estate of William Sheil, Jr., by Paul Taylor, Estate Representative; Judith Taft; Estate of Janet Lee Stevens, by Jo Ann Stevens, Administrator; Jo Ann Stevens; Hazen Hadley Stevens; Estate of Hazen Stevens by Scott Stevens, Administrator; Scott C. Stevens; Estate of Albert Votaw, by Estera Votaw, Executrix; Estera Votaw; Catherine Votaw; Claire Votaw; Marianne Votaw; Susan West; Gregory Votaw; Rayford Byers; Don Chubb; Robert Essington; Dennis

Foster; Brian Korn; Faith Lee; Charles Light; Jacques Massengill; Dundas McCullough; Rebecca McCullough; Raymond Miller; Catherine Nylund; Estate of Robert Pearson, by George Saunders, Executor; Dorothy Pech; Daniel Pellegrino; Leo Pezzi; John Reid; Beth Samuel; Ronald Kurt Shafer; Ronnie Tumolo; and Andrew Wartell, by and through counsel, bring this action seeking damages arising out of the April 18, 1983 terrorist attack against the United States Embassy in Beirut, Lebanon.  Plaintiffs move for judgment against Defendants the Islamic Republic of Iran and the Iranian Ministry of Information and Security, jointly and severally, and in support of their Complaint allege as follows:

## I.

## JURISDICTION AND VENUE

1.     Jurisdiction over the subject matter of this case arises under 28 U.S.C. § 1330(a).  Defendants the Islamic Republic of Iran and the Iranian Ministry of Information and Security are subject to suit in the courts of the United States pursuant to the Foreign Sovereign Immunities Act, as amended, 28 U.S.C. § 1605(a)(7), and related statutes.

2.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(f)(4).

## II.

## THE PARTIES

3.     Plaintiff Anne Dammarell, currently domiciled in Washington D.C., is and at all pertinent times was a United States citizen.  Ms. Dammarell was injured by an act of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and

1605(e)(1), and pursuant to Section 3 of the Torture Victims Protection Act of 1991, 28 U.S.C. § 1350 (note) ("TVPA"), in connection with the April 18, 1983 bombing of the United States Embassy in Beirut, Lebanon ("1983 Beirut Embassy bombing").

4.      Robert Ames was, at the time of the acts alleged herein, a United States citizen.  Mr. Ames was killed by an act of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and 1605(e)(1), and pursuant to Section 3 of the TVPA, in connection with the 1983 Beirut Embassy bombing.  The Estate of Robert Ames is represented by Yvonne Ames, as Administrator, for purposes of this lawsuit.

5.      Plaintiff Yvonne Ames, currently domiciled in Hickory, North Carolina, is the widow of Robert Ames, who died as a result of the 1983 Beirut Embassy bombing.  Mrs. Ames is, and at all pertinent times was, a United States citizen.

6.      Plaintiff Andrew Ames, currently domiciled in Acworth, Georgia, is the son of Robert Ames, who died as a result of the 1983 Beirut Embassy bombing.  Mr. Ames is, and at all pertinent times was, a United States citizen.

7.      Plaintiff Kevin Ames, currently domiciled in Hickory, North Carolina, is the son of Robert Ames, who died as a result of the 1983 Beirut Embassy bombing.  Mr. Ames is, and at all pertinent times was, a United States citizen.

8.      Plaintiff Kristen Ames Brown, currently domiciled in Fort Worth, Texas, is the daughter of Robert Ames, who died as a result of the 1983 Beirut Embassy bombing.  Ms. Brown is, and at all pertinent times was, a United States citizen.

9.     Plaintiff Karen (Ames) Hale, currently domiciled in Cumming, Georgia, is the daughter of Robert Ames, who died as a result of the 1983 Beirut Embassy bombing.  Ms. Hale is, and at all pertinent times was, a United States citizen.

10.     Plaintiff Adrienne (Ames) Opdkye, currently domiciled in Hickory, North Carolina, is the daughter of Robert Ames, who died as a result of the 1983 Beirut Embassy bombing.  Ms. Opdyke is, and at all pertinent times was, a United States citizen.

11.     Thomas Blacka was, at the time of the acts alleged herein, a United States citizen.  Mr. Blacka was killed by an act of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and 1605(e)(1), and pursuant to Section 3 of the TVPA, in connection with the 1983 Beirut Embassy bombing.  The Estate of Thomas Blacka is represented by Beryl Blacka, as Personal Representative, for purposes of this lawsuit.

12.     Plaintiff Beryl Blacka, currently domiciled in Washington D.C., is the widow of Thomas Blacka, who died as a result of the 1983 Beirut Embassy bombing.  Mrs. Blacka is, and at all pertinent times was, a United States citizen.

13.     Plaintiff Jane Blacka, currently domiciled in Washington, D.C., is the daughter of Thomas Blacka, who died as a result of the 1983 Beirut Embassy bombing.  Ms. Blacka is, and at all pertinent times was, a United States citizen.

14.    Plaintiff Thomas H. Blacka, currently domiciled in Washington D.C., is the son of Thomas Blacka, who died as a result of the 1983 Beirut Embassy bombing.  Mr. Blacka is, and at all pertinent times was, a United States citizen.

15.    Phyliss Faraci was, at the time of the acts alleged herein, a United States citizen.  Ms. Faraci was killed by an act of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and 1605(e)(1), and pursuant to Section 3 of the TVPA, in connection with the 1983 Beirut Embassy bombing.  The Estate of Phyliss Faraci is represented by Philip Faraci, as Administrator, for purposes of this lawsuit.

16.    Plaintiff Philip Faraci, currently domiciled in Monessen, Pennsylvania, is the brother of Phyliss Faraci, who died as a result of the 1983 Beirut Embassy bombing.  Mr. Faraci is, and at all pertinent times was, a United States citizen.

17.    Terry Gilden was, at the time of the acts alleged herein, a United States citizen.  Mr. Gilden was killed by an act of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and 1605(e)(1), and pursuant to Section 3 of the TVPA, in connection with the 1983 Beirut Embassy bombing.  The Estate of Terry Gilden is represented by Mary Gilden, as Administrator, for purposes of this lawsuit.

18.    Plaintiff Mary Gilden, currently domiciled in Fayetteville, North Carolina, is the widow of Terry Gilden, who died as a result of the 1983 Beirut Embassy bombing.  Mrs. Gilden is, and at all pertinent times was, a United States citizen.

19.    Plaintiff John Gilden, currently domiciled in East Wenatchee, Washington, is the father of Terry Gilden, who died as a result of the 1983 Beirut

Embassy bombing.  Mr. Gilden is, and at all pertinent times was, a United States citizen.

20.     Plaintiff Lorraine Gilden, currently domiciled in East Wenatchee, Washington, is the mother of Terry Gilden, who died as a result of the 1983 Beirut Embassy bombing.  Ms. Gilden is, and at all pertinent times was, a United States citizen.

21.     Plaintiff Teresa Gilden, currently domiciled in Cheney, Washington, is the daughter of Terry Gilden, who died as a result of the 1983 Beirut Embassy bombing.  Ms. Gilden is, and at all pertinent times was, a United States citizen.

22.     Kenneth Haas was, at the time of the acts alleged herein, a United States citizen.  Mr. Haas was killed by an act of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and 1605(e)(1), and pursuant to Section 3 of the TVPA, in connection with the 1983 Beirut Embassy bombing.  The Estate of Kenneth Haas is represented by Gene Haas, as Executor, for purposes of this lawsuit.

23.     Plaintiff Gene Haas, currently domiciled in Huron, Ohio, is the father of Kenneth Haas, who died as a result of the 1983 Beirut Embassy bombing.  Mr. Haas is, and at all pertinent times was, a United States citizen.

24.     Plaintiff Alexander Haas, currently domiciled in Wheaton, Maryland, is the son of Kenneth Haas, who died as a result of the 1983 Beirut Embassy bombing.  Mr. Haas is, and at all pertinent times was, a United States citizen.

25.     Plaintiff Alison Haas, currently domiciled in Columbia, South Carolina, is the widow of Kenneth Haas, who died as a result of the 1983 Beirut

Embassy bombing. Mrs. Haas is, and at all pertinent times was, a United States citizen.

26.    Frank Johnston was, at the time of the acts alleged herein, a United States citizen.  Mr. Johnston was killed by an act of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and 1605(e)(1), and pursuant to Section 3 of the TVPA, in connection with the 1983 Beirut Embassy bombing.  The Estate of Frank Johnston is represented by Arlette Johnston, as Administrator, for purposes of this lawsuit.

27.    Plaintiff Arlette Johnston, currently domiciled in McLean, Virginia, is the widow of Frank Johnston, who died as a result of the 1983 Beirut Embassy bombing.  Mrs. Johnston is, and at all pertinent times was, a United States citizen.

28.    James Lewis was, at the time of the acts alleged herein, a United States citizen.  Mr. Lewis was killed by an act of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and 1605(e)(1), and pursuant to Section 3 of the TVPA, in connection with the 1983 Beirut Embassy bombing.  The Estate of James Lewis is represented by Antoinette Lewis and Gregory Rupert, as Co-Administrators, for purposes of this lawsuit.

29.    Monique Lewis was, at the time of the acts alleged herein, a United States citizen.  Ms. Lewis was killed by an act of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and 1605 (e)(1), and pursuant to Section 3 of the TVPA, in connection with the 1983 Beirut Embassy bombing.  The Estate of Monique Lewis is

represented by Antoinette Lewis and Gregory Rupert, as Co-Administrators, for purposes of this lawsuit.

30.     Plaintiff Antoinette Lewis, currently domiciled in San Diego, California, is the mother of James Lewis and mother-in-law of Monique Lewis, who died as a result of the 1983 Beirut Embassy bombing.  Mrs. Lewis is, and all pertinent times was, a United States citizen.

31.     William McIntyre was, at the time of the acts alleged herein, a United States citizen.  Mr. McIntyre was killed by an act of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and 1605(e)(1), and pursuant to Section 3 of the TVPA, in connection with the 1983 Beirut Embassy bombing.  The Estate of William McIntyre is represented by Mary Lee McIntyre, as Executrix, for purposes of this lawsuit.

32.     Plaintiff Mary Lee McIntyre, currently domiciled in McLean, Virginia, is, and at all pertinent times was, a United States citizen.  Mrs. McIntyre is the widow of William McIntyre, who died as a result of the 1983 Beirut Embassy bombing, and was herself injured by an act of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and 1605(e)(1), and pursuant to Section 3 of the TVPA, in connection with the 1983 Beirut Embassy bombing.

33.     Plaintiff Margaret McIntyre Matteucci, currently domiciled in Albuquerque, New Mexico, is the daughter of William McIntyre, who died as a result of the 1983 Beirut Embassy bombing, and Plaintiff Mary Lee McIntyre, who

was injured as a result of the 1983 Beirut Embassy bombing.  Ms. Matteucci is, and at all pertinent times was, a United States citizen.

34.     Plaintiff Andrew McIntyre, currently domiciled in Seattle, Washington, is the son of William McIntyre, who died as a result of the 1983 Beirut Embassy bombing, and Plaintiff Mary Lee McIntyre, who was injured as a result of the 1983 Beirut Embassy bombing.  Mr. McIntyre is, and at all pertinent times was, a United States citizen.

35.     Plaintiff Julie McIntyre, currently domiciled in Albuquerque, New Mexico, is the daughter of William McIntyre, who died as a result of the 1983 Beirut Embassy bombing, and Plaintiff Mary Lee McIntyre, who was injured as a result of the 1983 Beirut Embassy bombing.  Ms. McIntyre is, and at all pertinent times was, a United States citizen.

36.     Corporal Robert McMaugh was, at the time of the acts alleged herein, a United States citizen.  Corporal McMaugh was killed by an act of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and 1605(e)(1), and pursuant to Section 3 of the TVPA, in connection with the 1983 Beirut Embassy bombing.  The Estate of Robert McMaugh is represented by Earl McMaugh and Annie Mullins, as Co-Administrators, for purposes of this lawsuit.

37.     Plaintiff Earl McMaugh, currently domiciled in Falls Church, Virginia, is the father of Corporal Robert McMaugh, who died as a result of the 1983 Beirut Embassy bombing.  Mr. McMaugh is, and at all pertinent times was, a United States citizen.

38.     Plaintiff Annie (McMaugh) Mullins, formerly domiciled in
Spotsylvania, Virginia, is the mother of Corporal Robert McMaugh, who died as a
result of the 1983 Beirut Embassy bombing.  Ms. Mullins was at all pertinent times
a United States citizen.

39.     Plaintiff Cherie (McMaugh) Jones, currently domiciled in Locust
Grove, Virginia, is the sister of Corporal Robert McMaugh, who died as a result of
the 1983 Beirut Embassy bombing.  Ms. Jones is, and at all pertinent times was, a
United States citizen.

40.     Plaintiff Michael McMaugh, currently domiciled in Bedford, Virginia,
is the brother of Corporal Robert McMaugh, who died as a result of the 1983 Beirut
Embassy bombing.  Mr. McMaugh is, and at all pertinent times was, a United
States citizen.

41.     Plaintiff Teresa (McMaugh) Hassan, currently domiciled in Fairfax,
Virginia, is the sister of Corporal Robert McMaugh, who died as a result of the 1983
Beirut Embassy bombing.  Ms. Hassan is, and at all pertinent times was, a United
States citizen.

42.     William Sheil was, at the time of the acts alleged herein, a United
States citizen.  Mr. Sheil was killed by an act of "extrajudicial killing," as defined in
28 U.S.C. §§ 1605(a)(7) and 1605(e)(1), and pursuant to Section 3 of the TVPA, in
connection with the 1983 Beirut Embassy bombing.  The Estate of William Sheil is
represented by John Sheil, as Administrator, for purposes of this lawsuit.

43.     Plaintiff John Sheil, currently domiciled in Beirut, Lebanon, is the son of William Sheil, who died as a result of the 1983 Beirut Embassy bombing.  Mr. Sheil is, and at all pertinent times was, a United States citizen.

44.     Plaintiff Laura (Sheil) Monday, currently domiciled in Worth, Illinois, is the daughter of William Sheil, who died as a result of the 1983 Beirut Embassy bombing.  Ms. Monday is, and at all pertinent times was, a United States citizen.

45.     Plaintiff Carole (Sheil) Person, currently domiciled in Purcellville, Virginia, is the daughter of William Sheil, who died as a result of the 1983 Beirut Embassy bombing.  Ms. Person is, and at all pertinent times was, a United States citizen.

46.     Plaintiff Cheryl (Sheil) Pienkowski, currently domiciled in Chicago, Illinois, is the daughter of William Sheil, who died as a result of the 1983 Beirut Embassy bombing.  Ms. Pienkowski is, and at all pertinent times was, a United States citizen.

47.     Plaintiff Elizabeth M. Sheil, currently domiciled in Worth, Illinois, is the daughter of William Sheil, who died as a result of the 1983 Beirut Embassy bombing.  Ms. Sheil is, and at all pertinent times was, a United States citizen.

48.     Plaintiff James Sheil, currently domiciled in Mount Morris, Pennsylvania, is the son of William Sheil, who died as a result of the 1983 Beirut Embassy bombing.  Mr. Sheil is, and at all pertinent times was, a United States citizen.

49.     Plaintiff William Sheil, Jr. now deceased, was the son of William Sheil, who died as a result of the 1983 Beirut Embassy bombing.  Mr. Sheil was at all pertinent times, a United States citizen.  The Estate of William Sheil Jr. is represented by Paul Taylor, as Estate Representative, for purposes of this law suit.

50.     Plaintiff Judith (Sheil) Taft, currently domiciled in Suffolk, Virginia , is the daughter of William Sheil, who died as a result of the 1983 Beirut Embassy bombing.  Ms. Sheil is, and at all pertinent times was, a United States citizen.

51.     Janet Lee Stevens was, at the time of the acts alleged herein, a United States citizen.  Ms. Stevens was killed by an act of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and 1605(e)(1), and pursuant to Section 3 of the TVPA, in connection with the 1983 Beirut Embassy bombing.  The Estate of Janet Lee Stevens is represented by Jo Ann Stevens, as Administrator, for purposes of this lawsuit.

52.     Jo Ann Stevens, currently domiciled in Marietta, Georgia, is the sister of Janet Lee Stevens, who died as a result of the 1983 Beirut Embassy bombing.  Ms. Stevens is, and at all pertinent times was, a United States citizen.

53.     Hazen Hadley Stevens, currently domiciled in Pine Mountain, Georgia, is the brother of Janet Lee Stevens, who died as a result of the 1983 Beirut Embassy bombing.  Mr. Stevens is, and at all pertinent times was, a United States citizen.

54.     Hazen Stevens is the father of Janet Lee Stevens, who died as a result of the 1983 Beirut Embassy bombing.  Mr. Stevens, who was living at the time of

his daughter's death, died in 1997, and was at the time domiciled in Venice, Florida. Mr. Stevens was at all pertinent times a United States citizen. The Estate of Hazen Stevens is represented by Scott Stevens, as Administrator, for purposes of this litigation.

55.    Scott Stevens, currently domiciled in Alpharetta, Georgia, is the brother of Janet Lee Stevens, who died as a result of the 1983 Beirut Embassy bombing. Mr. Stevens is, and at all pertinent times was, a United States citizen.

56.    Albert Votaw was, at the time of the acts alleged herein, a United States citizen. Mr. Votaw was killed by an act of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and 1605(e)(1), and pursuant to Section 3 of the TVPA, in connection with the 1983 Beirut Embassy bombing. The Estate of Albert Votaw is represented by Estera Votaw, as Executrix, for purposes of this lawsuit.

57.    Plaintiff Estera Votaw, currently domiciled in Washington D.C., is the widow of Albert Votaw, who died as a result of the 1983 Beirut Embassy bombing. Mrs. Votaw is, and at all pertinent times was, a United States citizen.

58.    Plaintiff Catherine Votaw, currently domiciled in Bala Cynwyd, Pennsylvania, is the daughter of Albert Votaw, who died as a result of the 1983 Beirut Embassy bombing. Ms. Votaw is, and at all pertinent times was, a United States citizen.

59.    Plaintiff Claire Votaw, currently domiciled in Fairfax, Virginia, is the daughter of Albert Votaw, who died as a result of the 1983 Beirut Embassy bombing. Ms. Votaw is, and at all pertinent times was, a United States citizen.

60.     Plaintiff Marianne Votaw, currently domiciled in Charlottesville, Virginia, is the daughter of Albert Votaw, who died as a result of the 1983 Beirut Embassy bombing.  Ms. Votaw is, and at all pertinent times was, a United States citizen.

61.     Plaintiff Susan (Votaw) West, currently domiciled in Tasmania, is the daughter of Albert Votaw, who died as a result of the 1983 Beirut Embassy bombing.  Ms. West is, and at all pertinent times was, a United States citizen.

62.     Plaintiff Gregory Votaw, currently domiciled in Bethesda, Maryland, is the brother of Albert Votaw, who died as a result of the 1983 Beirut Embassy bombing.  Mr. Votaw is, and at all pertinent times was, a United States citizen.

63.     Plaintiff Rayford Byers, currently domiciled in Lawton, Oklahoma, is and at all pertinent times was a United States citizen.  Mr. Byers was injured by an act of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and 1605(e)(1), and pursuant to Section 3 of the TVPA, in connection with the 1983 Beirut Embassy bombing.

64.     Plaintiff Don Chubb, currently domiciled in Springfield, Virginia, is and at all pertinent times was a United States citizen.  Mr. Chubb was injured by an act of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and 1605(e)(1), and pursuant to Section 3 of the TVPA, in connection with the 1983 Beirut Embassy bombing.

65.     Plaintiff Robert Essington, currently domiciled in Sterling, Virginia, is and at all pertinent times was a United States citizen.  Mr. Essington was injured

by an act of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and

1605(e)(1), and pursuant to Section 3 of the TVPA, in connection with the 1983

Beirut Embassy bombing.

66.    Plaintiff Dennis Foster, currently domiciled in Rockville, Maryland, is

and at all pertinent times was a United States citizen.  Mr. Foster was injured by

an act of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and 1605(e)(1),

and pursuant to Section 3 of the TVPA, in connection with the 1983 Beirut Embassy

bombing.

67.    Plaintiff Brian Korn, currently domiciled in Evansville, Indiana, is and

at all pertinent times was a United States citizen.  Mr. Korn was injured by an act

of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and 1605(e)(1), and

pursuant to Section 3 of the TVPA, in connection with the 1983 Beirut Embassy

bombing.

68.    Plaintiff Faith Lee, currently domiciled in Chicago, Illinois, is and at

all pertinent times was a United States citizen.  Ms. Lee was injured by an act of

"extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and 1605(e)(1), and

pursuant to Section 3 of the TVPA, in connection with the 1983 Beirut Embassy

bombing.

69.    Plaintiff Charles Light, currently domiciled in Fredericksburg,

Virginia, is and at all pertinent times was a United States citizen.  Mr. Light was

injured by an act of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and

1605(e)(1), and pursuant to Section 3 of the TVPA, in connection with the 1983 Beirut Embassy bombing.

70.     Plaintiff Jacques Massengill, currently domiciled in Huntsville, Alabama, is and at all pertinent times was a United States citizen.  Mr. Massengill was injured by an act of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and 1605(e)(1), and pursuant to Section 3 of the TVPA, in connection with the 1983 Beirut Embassy bombing.

71.     Plaintiff Dundas McCullough, currently domiciled in Dhaka, Bangladesh, is and at all pertinent times was a United States citizen.  Mr. McCullough was injured by an act of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and 1605 (e)(1), and pursuant to Section 3 of the TVPA, in connection with the 1983 Beirut Embassy bombing.

72.     Plaintiff Rebecca McCullough, currently domiciled in North Falmouth, Massachusetts, is and at all pertinent times was a United States citizen.  Ms. McCullough was injured by an act of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and 1605(e)(1), and pursuant to Section 3 of the TVPA, in connection with the 1983 Beirut Embassy bombing.

73.     Plaintiff Raymond Miller, currently domiciled in Lakeland, Florida, is and at all pertinent times was a United States citizen.  Mr. Miller was injured by an act of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and 1605(e)(1), and pursuant to Section 3 of the TVPA, in connection with the 1983 Beirut Embassy bombing.

74.     Plaintiff Catherine Nylund, currently domiciled in Torrance, California, is and at all pertinent times was a United States citizen.  Mrs. Nylund was injured by an act of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and 1605(e)(1), and pursuant to Section 3 of the TVPA, in connection with the 1983 Beirut Embassy bombing.

75.     Robert Pearson, now deceased, was at the time of the acts alleged herein a United States citizen.  Mr. Pearson was injured by an act of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and 1605(e)(1), and pursuant to Section 3 of the TVPH, in connection with the 1983 Beirut Embassy bombing.  The Estate of Robert Pearson is represented by George Saunders, as Executor, for purposes of this lawsuit.

76.     Plaintiff Dorothy Pech, currently domiciled in Vienna, Virginia, is and at all pertinent times was a United States citizen.  Ms. Pech was injured by an act of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and 1605(e)(1), and pursuant to Section 3 of the TVPA, in connection with the 1983 Beirut Embassy bombing.

77.     Plaintiff Daniel Pellegrino, currently domiciled in Kingston, Jamaica, is and at all pertinent times was a United States citizen.  Mr. Pellegrino was injured by an act of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and 1605(e)(1), and pursuant to Section 3 of the TVPA, in connection with the 1983 Beirut Embassy bombing.

78.     Plaintiff Leo Pezzi, currently domiciled in Vienna, Virginia, is and at all pertinent times was a United States citizen.  Mr. Pezzi was injured by an act of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and 1605(e)(1), and pursuant to Section 3 of the TVPA, in connection with the 1983 Beirut Embassy bombing.

79.     Plaintiff John Reid, currently domiciled in Bangkok, Thailand, is and at all pertinent times was a United States citizen.  Mr. Reid was injured by an act of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and 1605(e)(1), and pursuant to Section 3 of the TVPA, in connection with the 1983 Beirut Embassy bombing.

80.     Plaintiff Beth Samuel, currently domiciled in Corpus Christi, Texas, is and at all pertinent times was a United States citizen.  Ms. Samuel was injured by an act of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and 1605(e)(1), and pursuant to Section 3 of the TVPA, in connection with the 1983 Beirut Embassy bombing.

81.     Plaintiff Ronald Kurt Shafer, currently domiciled in Chatsworth, Illinois, is and at all pertinent times was a United States citizen.  Mr. Shafer was injured by an act of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and 1605(e)(1), and pursuant to Section 3 of the TVPA, in connection with the 1983 Beirut Embassy bombing.

82.     Plaintiff Ronnie Tumolo, currently domiciled in Sterling, Virginia, is and at all pertinent times was a United States citizen.  Mr. Tumolo was injured by

an act of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and 1605(e)(1), and pursuant to Section 3 of the TVPA, in connection with the 1983 Beirut Embassy bombing.

83.     Plaintiff Andrew Wartell, currently domiciled in Vienna, Virginia, is and at all pertinent times was a United States citizen.  Mr. Wartell was injured by an act of "extrajudicial killing," as defined in 28 U.S.C. §§ 1605(a)(7) and 1605(e)(1), and pursuant to Section 3 of the TVPA, in connection with the 1983 Beirut Embassy bombing.

84.     Defendant the Islamic Republic of Iran ("Iran") is a foreign sovereign state.  Iran operated under a constitutional monarchy until January 16, 1979, when Shah Mohammed Reza Pahlavi fled the country after a period of violent unrest orchestrated by the Ayatollah Ruhollah Musawi Khomeini and his followers.  On April 1, 1979, Ayatollah Khomeini declared the creation of the Islamic Republic of Iran.

85.      Iran has been designated a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. Appx. § 2405(j)), and Section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. § 2371) since January 19, 1984.  Iran was designated a state sponsor of terrorism as a result, *inter alia*, of the 1983 Beirut Embassy bombing.

86.     Defendant the Iranian Ministry of Information and Security ("MOIS") functions as the Iranian Intelligence Service and, in this capacity, as an agent of Iran.

87.    MOIS operates both within and outside Iranian territory.

88.    This Court, in a number of separate cases, has found Iran and MOIS liable to victims of state-sponsored terrorism conducted by terrorist organizations in Lebanon, Israel and Gaza.  *See Kerr v. The Islamic Republic of Iran,* 245 F. Supp.2d 59 (D.D.C. 2003); *Stethem v. The Islamic Republic of Iran*, 201 F. Supp. 2d 78 (D.D.C. 2002); *Turner v. The Islamic Republic of Iran*, Slip Op., Civ. A. No. 01-1981, (D.D.C. Oct. 2, 2002); *Weinstein v. The Islamic Republic of Iran,* 184 F. Supp.2d 13 (D.D.C. 2002)); *Jenco v. The Islamic Republic of Iran,* 154 F. Supp.2d 27 (D.D.C. 2001), *aff'd sub nom. Bettis v. The Islamic Republic of Iran*, 315 F.3d 325 (D.C. Cir. 2003); *Wagner v. The Islamic Republic of Iran*, 172 F. Supp.2d 128 (D.D.C. 2001); *Sutherland v. The Islamic Republic of Iran*, 151 F. Supp.2d 27 (D.D.C. 2001); *Polhill v. The Islamic Republic of Iran*, No. 00-1798, 2001 U.S. Dist. LEXIS 15322 (D.D.C. Aug. 23, 2001); ); *Eisenfeld v. The Islamic Republic of Iran*, 172 F. Supp.2d 1 (D.D.C. 2000); *Elahi v. The Islamic Republic of Iran*, 124 F. Supp.2d 97 (D.D.C. 2000); *Anderson v. The Islamic Republic of Iran*, 90 F. Supp.2d 107 (D.D.C. 2000); *Higgins v. The Islamic Republic of Iran*, No. 99-00377, 2000 U.S. Dist. LEXIS 22173 (D.D.C. Sept. 21, 2000); *Cicippio v. The Islamic Republic of Iran*, 18 F. Supp.2d 62 (D.D.C. 1998); *Flatow v. The Islamic Republic of Iran*, 999 F. Supp. 1 (D.D.C. 1998).

## III.

## FACTUAL ALLEGATIONS

89.     In April 1975, civil war erupted in Lebanon among the country's religious and cultural factions, including Maronite Christians, Sunni Muslims, Shi'ite Muslims, and Druse.

90.     By the early 1980s, the Lebanese government was incapable of providing basic social services to, and had little control over, most of the country. The capital city, Beirut, was divided into multiple quarters that were controlled by militias loyal to the various factions vying for dominance.

91.     In June 1982, Israel invaded southern Lebanon.  Soon after the invasion, Hizbollah -- a politico-paramilitary terrorist organization -- was established in Lebanon with the guidance and financial support of the government of Iran.

92.     At all pertinent times herein, Iran provided material support and resources, as defined in 18 U.S.C. § 2339A, to Hizbollah by providing it with funding, direction, and training for its terrorist activities in Lebanon.  Iran accordingly sponsored Hizbollah within the meaning of 28 U.S.C. § 1605(a)(7).

93.     As part of its operations, MOIS acted as a conduit for Iran's provision of funds, training and direction to Hizbollah for its terrorist activities in Lebanon. In so doing, MOIS, acting as an agent of Iran, performed actions within the scope of its agency within the meaning of 28 U.S.C. § 1605(a)(7).

94.    Among Hizbollah's major activities in Lebanon was its opposition to the Western presence in the country, including the presence of the United States.

95.    Accordingly, during the period following the 1982 Israeli invasion of Lebanon, Hizbollah and other terrorist organizations began orchestrating a series of violent attacks against Westerners and Western installations throughout Lebanon generally and the Lebanese capital of Beirut in particular.

96.    The major attacks perpetrated by Hizbollah and other terrorist organizations during this time period included the October, 1983 bombing of the Marine Corps barracks in Beirut, which resulted in the deaths of 241 U.S. servicemen; the January, 1984 assassination of Malcolm Kerr, President of the American University of Beirut; and the October, 1984 bombing of the U.S. Embassy Annex in Beirut, which resulted in the deaths of two U.S. citizens.

97.    In addition to these attacks, beginning in 1983 and ending in 1991 with the release of U.S. journalist Terry Anderson, numerous citizens of the United States and Western European countries were kidnapped in and around Beirut and held hostage, often for extended periods of time.

98.    Hizbollah's terrorist activities in Lebanon included the April 18, 1983 attack against the United States Embassy in Beirut.

99.    The 1983 Beirut Embassy bombing was the first terrorist suicide bombing of a United States Embassy, in Lebanon or elsewhere, that resulted in mass casualties.  It also represented Hizbollah's first large-scale attack in Beirut targeting a U.S. facility.

100.    Specifically, on April 18, 1983 at approximately 1:05 p.m., an unidentified male driver crashed a vehicle laden with hundreds of pounds of explosives into the main entrance of the U.S. Embassy in Beirut.

101.    Upon crashing into the Embassy, the vehicle exploded with a force so powerful that seven floors in the center section of the crescent-shaped building collapsed.

102.    Portions of the Embassy, including the Marine security guard post, the cafeteria, the United States Information Service library, the personnel section, and the consular section were completely destroyed by the blast.  Other parts of the building were severely damaged.

103.    As a result of the blast and the resulting damage and destruction of portions of the Embassy, sixty-three people, including seventeen U.S. citizens, were killed.  Over one hundred others were injured.

104.    Among those killed were Robert Ames, Thomas Blacka, Phyliss Faraci, Terry Gilden, Kenneth Haas, Frank Johnston, James Lewis, Monique Lewis, William McIntyre, Robert McMaugh, William Sheil, Janet Lee Stevens and Albert Votaw, whose estates are represented herein.

105.    Among those injured were Plaintiffs Anne Dammarell, Rayford Byers, Don Chubb, Robert Essington, Dennis Foster, Brian Korn, Faith Lee, Charles Light, Jacques Massengill, Dundas McCullough, Rebecca McCullough, Mary Lee McIntyre, Raymond Miller, Catherine Nylund, Robert Pearson, Dorothy Pech, Daniel

Pellegrino, Leo Pezzi, John Reid, Beth Samuel, Ronald Kurt Shafer, Ronnie Tumolo, and Andy Wartell.

106.   Plaintiff Anne Dammarell was posted to the Beirut Embassy as a General Development Officer with the United States Agency for International Development ("USAID" or "AID").  Ms. Dammarell was eating lunch in the Embassy cafeteria at the time of the bombing, the force of which hurled her through the cafeteria wall.  She suffered multiple injuries, including nineteen fractures, the embedding of glass under her skin, and multiple lacerations over her face, head, neck and limbs, as a result.  Ms. Dammarell was initially treated in Beirut, and subsequently at the U.S. Army hospital in Wiesbaden, Germany, and Georgetown University Hospital in Washington, D.C.  She further endured multiple corrective surgeries and months of physical therapy, during which she re-learned how to walk, read, and write.  Ultimately, Ms. Dammarell permanently lost the full use of two fingers on her left hand, full range of movement of her left arm and shoulder, and normal use of her left foot.  She also subsequently suffered from Post-Traumatic Stress Disorder.  As a result of the bombing, Ms. Dammarell suffered physical pain, mental anguish, emotional pain and suffering, and economic loss.

107.   Robert Ames, the husband of Plaintiff Yvonne Ames and father of Plaintiffs Andrew Ames, Kevin Ames, Kristen Brown, Karen Hale, and Adrienne Opdyke, was not posted to the Beirut Embassy, but rather, at the time of the bombing, was visiting the Embassy on official business as the Director of Near East

and South Asian Analysis for the Central Intelligence Agency.  Mr. Ames sustained fatal injuries as a result of the attack.

108.    Plaintiff Yvonne Ames is the widow of Robert Ames.  Mrs. Ames was at work in suburban Virginia when one of her husband's co-workers called and stated that the Beirut Embassy had been attacked, but that it was unknown whether Robert Ames was among those killed or injured.  Later that evening, while visiting friends, Mrs. Ames received a phone call informing her that colleagues of her husband had arrived at the Ames' home to confirm that Robert Ames had been killed.  As a result of the bombing, Mrs. Ames suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship, consortium and solatium of Robert Ames.

109.    Plaintiff Andrew Ames is the son of Robert Ames.  Mr. Ames, who was an eighth grade student at the time of the bombing, was at home when friends of the family came by, and indicated that there had been an incident at the U.S. Embassy in Beirut.  A short time later, after Mr. Ames had turned on the television to watch news coverage of the bombing, the family friends confirmed that Robert Ames had been killed in the attack.  As a result of the bombing, Mr. Ames suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship, and solatium of Robert Ames.

110.    Plaintiff Kevin Ames is the son of Robert Ames.  Mr. Ames, who was a sixth grade student at the time of the bombing, saw television news report of the bombing, but was unaware that his father was in Beirut generally or at the U.S.

Embassy specifically.  Later that evening, friends of the family came by, and confirmed that Robert Ames had been killed in the attack.  As a result of the bombing, Mr. Ames suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship, and solatium of Robert Ames

111.    Plaintiff Kristen Brown is the daughter of Robert Ames.  Ms. Brown, who was a high school senior at the time of the bombing, saw television news reports of the bombing, but was unaware that her father was in Beirut generally or at the U.S. Embassy specifically.  Later that evening, friends of her parents came to the family home, stated that there had been an "accident" in Beirut, and confirmed that Robert Ames had been killed.  As a result of the bombing, Ms. Brown suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship, and solatium of Robert Ames.

112.    Plaintiff Karen Hale is the daughter of Robert Ames.  Ms. Hale, who was a high school sophomore at the time of the bombing, was on the phone with a friend when her sister told her that there had been a bombing in Beirut.  Later that evening, as she did her homework, her brother Andrew Ames came into her room and confirmed that Robert Ames had been killed in the attack.  As a result of the bombing, Ms. Hale suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship, and solatium of Robert Ames.

113.    Plaintiff Adrienne Opdyke is the daughter of Robert Ames.  Ms. Opdyke, who was a student at Concordia College at the time of the bombing, was phoned on the evening of the attack by her mother Yvonne Ames, who asked whether Ms. Opdyke had watched news coverage regarding the bombing of the Embassy.  Mrs. Ames then stated that Robert Ames had gone on a trip to Beirut and was among the Americans killed in the attack.  As a result of the bombing, Ms. Opdyke suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship, and solatium of Robert Ames.

114.    Thomas Blacka, the husband of Plaintiff Beryl Blacka and father of Plaintiffs Jane Blacka and Thomas H. Blacka, was posted to the Beirut Embassy as a USAID consultant.  At the time of the bombing, Mr. Blacka was eating lunch in the Embassy cafeteria.  Mr. Blacka sustained fatal injuries as a result of the attack.

115.    Plaintiff Beryl Blacka is the widow of Thomas Blacka.  Mrs. Blacka, who at the time of the bombing resided in Denver, Colorado, learned of the attack and of her husband's death via telephone on the morning of April 19, 1983.  As a result of the bombing, Mrs. Blacka suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship, consortium and solatium of Thomas Blacka.

116.    Plaintiff Jane Blacka is the daughter of Thomas Blacka.  Ms. Blacka, who at the time of the bombing was a college senior in Colorado Springs, Colorado, was informed of the bombing and of her father's death by her mother on the

morning of April 19, 1983.  As a result of the bombing, Ms. Blacka suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship and solatium of Thomas Blacka.

117.   Plaintiff Thomas H. Blacka is the son of Thomas Blacka.  Mr. Blacka, who was living in Bangkok, Thailand at the time of the bombing, was not informed of his father's death until several weeks after the event due to communications difficulties.  Accordingly, he was unable to attend his father's funeral.  As a result of the bombing, Mr. Blacka suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship and solatium of Thomas Blacka.

118.   Phyliss Faraci, the sister of Plaintiff Philip Faraci, was posted to the Beirut Embassy as an Administrative Specialist with the U.S. Department of State. Ms. Faraci suffered fatal injuries as a result of the attack.

119.   Plaintiff Philip Faraci is the brother of Phyliss Faraci.  Mr. Faraci was at home when he learned of the bombing, from a television news report, on the morning of the attack.  Later that day, government officials contacted Mr. Faraci and informed him that his sister was missing.  A few days later, government officials contacted Mr. Faraci at work and stated that his sister's body had been located and identified.  As a result of the bombing, Mr. Faraci suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship and solatium of Phyliss Faraci.

120.    Terry Gilden, the husband of Plaintiff Mary Gilden, son of Plaintiffs John Gilden and Lorraine Gilden, and father of Plaintiff Teresa Gilden, was posted to the Beirut Embassy as a Security Officer with the U.S. Department of State.  Mr. Gilden sustained fatal injuries as a result of the attack.

121.    Plaintiff Mary Gilden is the widow of Terry Gilden.  Mrs. Gilden was visiting family in Michigan when she heard about the bombing through the media. She later learned, through communications with friends of her husband, that Terry Gilden had been at the Embassy at the time of the attack.  The following day, Government officials visited Mrs. Gilden and confirmed her husband's death.  As a result of the bombing, Mrs. Gilden suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship, consortium and solatium of Terry Gilden.

122.    Plaintiff John Gilden is the father of Terry Gilden.  Mr. Gilden heard about the Embassy bombing via a radio broadcast on the morning of the attack. The brother of his daughter-in-law Mary Gilden later phoned, and confirmed that Terry Gilden had been killed in the bombing.  As a result of the bombing, Mr. Gilden suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship and solatium of Terry Gilden.

123.    Plaintiff Lorraine Gilden is the mother of Terry Gilden.  Ms. Gilden was phoned at work by her husband John Gilden, and informed that her son Terry Gilden had been killed in the Embassy bombing.  As a result of the bombing, Ms.

Gilden suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship and solatium of Terry Gilden.

124.   Plaintiff Teresa Gilden is the daughter of Terry Gilden.  Ms. Gilden was four months of age at the time of her father's death.  As a result of the bombing, Ms. Gilden suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship and solatium of Terry Gilden.

125.   Kenneth Haas, the husband of Plaintiff Alison Haas, son of Plaintiff Gene Haas and father of Plaintiff Alexander Haas, was posted to the Beirut Embassy as a Political Officer for the U.S. Department of State.  At the time of the bombing, Mr. Haas was in his office at the Embassy.  Mr. Haas sustained fatal injuries as a result of the attack.

126.   Plaintiff Gene Haas is the father of Kenneth Haas.  Mr. Haas, who was at work at the time the bombing, was informed of the attack by a co-worker. Kenneth Haas' body was located and positively identified three days after the bombing.  As a result of the bombing, Mr. Haas suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship and solatium of Kenneth Haas.

127.   Plaintiff Alexander Haas is the son of Kenneth Haas.  Mr. Haas, who was eight years of age at the time of the bombing, was asleep when his mother woke him up, told him that something had happened in Beirut, and got him out of bed to

watch news coverage of the attack.  The next day, his grandfather Gene Haas called and confirmed that Kenneth Haas had been killed.  As a result of the bombing, Mr. Haas suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship and solatium of Kenneth Haas.

128.   Plaintiff Alison Haas is the widow of Kenneth Haas.  Mrs. Haas, who had accompanied her husband to Beirut and was in Beirut at the time of the bombing, felt the force of the blast, and was informed by a neighborhood shopkeeper that the U.S. Embassy had been attacked.  Three days later, rescue workers discovered her husband's body.  As a result of the bombing, Mrs. Haas suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship, consortium and solatium of Kenneth Haas.

129.   Frank Johnston, the husband of Plaintiff Arlette Johnston, was posted to the Beirut Embassy as an Economic Officer for the U.S. Department of State.  At the time of the bombing, Mr. Johnston was working in his office at the Embassy.  Mr. Johnston sustained fatal injuries as a result of the attack.

130.   Plaintiff Arlette Johnston is the widow of Frank Johnston.  Mrs. Johnston, who had accompanied her husband to Beirut, was in the couple's apartment doing laundry when the employee of a family friend came to inform her of the Embassy bombing.  Frank Johnston's death in the attack was thereafter confirmed.  As a result of the bombing, Mrs. Johnston suffered mental anguish,

emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship, consortium, and solatium of Frank Johnston.

131.    James Lewis, the son of Plaintiff Antoinette Lewis and husband of Monique Lewis, was posted to the Beirut Embassy as a Political/Military Officer for the U.S. Department of State.  At the time of the bombing, Mr. Lewis was in his office at the Embassy.  Mr. Lewis sustained fatal injuries as a result of the attack. His wife, Monique Lewis, was also killed in the blast.

132.    Monique Lewis, daughter-in-law of Plaintiff Antoinette Lewis and wife of James Lewis, was posted to the Beirut Embassy as a Secretary for the U.S. Department of State.  At the time of the bombing, Ms. Lewis was in her office at the Embassy.  Ms. Lewis sustained fatal injuries as a result of the attack. Her husband, James Lewis, was also killed in the blast.

133.    Plaintiff Antoinette Lewis is the mother of James Lewis and mother-in-law of Monique Lewis.  Mrs. Lewis, who was at home in California at the time of the bombing, received a telephone call from her daughter informing her of the attack.  Government officials confirmed to Mrs. Lewis that her son was at the Embassy at the time of the attack, and several days later confirmed that he and his wife Monique Lewis had been killed in the blast.  As a result of the bombing, Mrs. Lewis suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship and solatium of James Lewis.

134.   William McIntyre, the husband of Plaintiff Mary Lee McIntyre and father of Plaintiffs Margaret McIntyre, Julie McIntyre, and Andrew McIntyre, was Deputy Director of USAID at the Beirut Embassy.  At the time of the bombing, Mr. McIntyre was eating lunch in the Embassy cafeteria.  Mr. McIntyre sustained fatal injuries as a result of the attack.

135.   Plaintiff Mary Lee McIntyre is the widow of William McIntyre.  Mrs. McIntyre, who had accompanied her husband to Beirut, was picking up mail at the Embassy at the time of the bombing.  Mrs. McIntyre suffered multiple injuries from flying glass and other debris that sheared off the skin beneath her chin, damaged her eye, and lacerated her face, scalp, neck and arms, causing significant blood loss.  She was initially treated at American University of Beirut Hospital, where she was informed that her husband had been killed by the blast, and subsequently transported to the U.S. Army hospital in Weisbaden, Germany, and thereafter to the United States.  As a result of the bombing, Mrs. McIntyre suffered physical pain, mental anguish, economic loss, and emotional pain and suffering, and was deprived of the assistance, society, companionship, consortium and solatium of William McIntyre.

136.   Plaintiff Margaret McIntyre Matteucci is the daughter of William and Plaintiff Mary Lee McIntyre.  Ms. Matteucci, who was attending high school in St. Louis at the time of the bombing, was informed of the bombing by a school dean on the morning of the attack.  Later that morning, Ms. Matteucci learned that her mother had been critically injured in the blast, and was subsequently informed by

her aunt that her father had been killed in the attack.  As a result of the bombing, Ms. McIntyre suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship and solatium of William McIntyre.

137.   Plaintiff Andrew McIntyre is the son of William McIntyre and Plaintiff Mary Lee McIntyre.  Mr. McIntyre, who was a high school senior in Pennsylvania at the time of the bombing, first heard news of the bombing over the radio the morning of the attack.  Later the same day, he was informed by his aunt that his father had been killed and his mother critically injured in the blast.  As a result of the bombing, Mr. McIntyre suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship and solatium of William McIntyre.

138.   Plaintiff Julie McIntyre is the daughter of William McIntyre and Plaintiff Mary Lee McIntyre.  Ms. McIntyre, who was a college junior at the University of Virginia at the time of the bombing, was pulled from class by a college dean and connected via telephone with her aunt, who informed her that her father had been killed and her mother critically injured in the blast.  As a result of the bombing, Ms. McIntyre suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship and solatium of William McIntyre.

139.   Robert McMaugh, the son of Plaintiffs Earl McMaugh and Annie Mullins and brother of Plaintiffs Cherie Jones, Michael McMaugh and Teresa

Hassan, was a Corporal in the Marine Security Guard contingent assigned to protect the Beirut Embassy. Corporal McMaugh was stationed at Guard Post 1 in the Embassy's main lobby, near the center of the blast, at the time of the bombing. As a result of the blast, he was buried beneath the Embassy's collapsed center floors, and sustained fatal injuries.

140.   Plaintiff Earl McMaugh is the father of Robert McMaugh. Mr. McMaugh, who was at work at the time of the bombing, learned of the attack from a co-worker. Several days after the attack, military officials came to the family home and informed Mr. McMaugh that his son's death had been confirmed. As a result of the bombing, Mr. McMaugh suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship and solatium of Robert McMaugh.

141.   Plaintiff Annie Mullins is the mother of Robert McMaugh. Ms. Mullins learned of the Embassy bombing from her son Michael McMaugh, who had heard about the attack via a radio broadcast the morning of the attack. Several days after the attack, military officials came to the family home and informed Ms. Mullins that her son's death had been confirmed. As a result of the bombing, Ms. Mullins suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship and solatium of Robert McMaugh.

142.   Plaintiff Cherie Jones is the sister of Robert McMaugh. Ms. Jones, who was eight years of age at the time of the bombing, learned of the attack and her

brother's death through other family members.  As a result of the bombing, Ms. Jones suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship and solatium of Robert McMaugh.

143.   Plaintiff Michael McMaugh is the brother of Robert McMaugh.  Mr. McMaugh, who was a high school senior at the time of the bombing, learned of the attack via a radio broadcast the day of the bombing.  Several days after the attack, military officials came to the family home and confirmed that Robert McMaugh had been killed in the attack.  As a result of the bombing, Mr. McMaugh suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship and solatium of Robert McMaugh.

144.   Plaintiff Teresa Hassan is the sister of Robert McMaugh.  Ms. Hassan, who was eighteen years of age at the time of the bombing, learned of the attack from a television broadcast the morning of the attack.  Several days after the attack, military officials came to the family home and confirmed that Robert McMaugh had been killed in the attack.  As a result of the bombing, Ms. Hassan suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship and solatium of Robert McMaugh.

145.   William Sheil, the father of Plaintiffs John Sheil, Laura Monday, Carole Person, Cheryl Pienkowski, Elizabeth Sheil, James Sheil, William Sheil, Jr.,

and Judith Taft, was posted to the Embassy as a civilian training officer with the United States Army.  Mr. Sheil sustained fatal injuries as a result of the attack.

146.    Plaintiff John Sheil is the son of William Sheil.  Mr. Sheil, who was in college at Virginia Polytechnic Institute and State University at the time of the attack, first learned of the bombing from a classmate, but did not initially believe that William Sheil had been injured in the bombing.  The following day, Mr. Sheil's sister Carole Person informed him that their father had been at the Embassy and was listed as missing.  Two days later, William Sheil's death was confirmed.   As a result of the bombing, Mr. Sheil suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship and solatium of William Sheil.

147.    Plaintiff Laura Monday is the daughter of William Sheil.  Ms. Monday learned of the bombing the day after the attack when her sister, Cheryl Pienkowski, telephoned her at home, informed her of the bombing and indicated that their father was missing.  Several days later, Ms. Pienkowski confirmed William Sheil's death.  As a result of the bombing, Ms. Monday suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship and solatium of William Sheil.

148.    Plaintiff Carole Person is the daughter of William Sheil.  Ms. Person learned of the bombing from news reports the day of the attack, with subsequent reports listing William Sheil as among the missing.  Government officials later confirmed that William Sheil was missing and, three days after the attack, formally

informed Ms. Person that her father's body had been located and identified.  As a result of the bombing, Ms. Person suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship and solatium of William Sheil.

149.   Plaintiff Cheryl Pienkowski is the daughter of William Sheil.  Ms. Pienkowski first learned of the bombing from a television news report the day of the attack, and thereafter contacted her sister, Elizabeth Sheil, and asked her to verify their father's whereabouts.  Ms. Sheil later confirmed that their father had been in Beirut.  Soon thereafter, government officials informed Ms. Pienkowski that her father was missing and ultimately, after several more days, confirmed that he had been killed in the attack.  As a result of the bombing, Ms. Pienkowski suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship and solatium of William Sheil.

150.   Plaintiff Elizabeth Sheil is the daughter of William Sheil.  Ms. Sheil, first learned of the bombing through a television news report. A short time later, Ms. Sheil's sister, Cheryl Pienkowski, telephoned and asked Ms. Sheil to verify their father's whereabouts.  Ms. Sheil ultimately determined, and government officials confirmed, that William Sheil had been in Beirut and was missing.  Several days later, Ms. Pienkowski informed Ms. Sheil that their father's death was confirmed.  As a result of the bombing, Ms. Sheil suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship and solatium of William Sheil.

151.    Plaintiff James Sheil is the son of William Sheil.  Mr. Sheil first learned of the bombing from a newspaper report, while on his way to work the day of the attack.  Later that afternoon, he received an urgent message from his sister, Cheryl Pienkowski, who ultimately indicated that their father was missing in the attack.  Several days later, Mr. Sheil learned that his father's body had been located and identified.  As a result of the bombing, Mr. Sheil suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship and solatium of William Sheil.

152.    Plaintiff William Sheil, Jr. (deceased), was the son of William Sheil.  Mr. Sheil first learned of the bombing from his sister Cheryl Pienkowski, who phoned the day of the attack and indicated that their father was listed as missing.  Several days later, Mr. Sheil learned that his father's body had been located and identified. As a result of the bombing, Mr. Sheil suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship and solatium of William Sheil.

153.    Plaintiff Judith Taft is the daughter of William Sheil.  Ms. Taft first learned of the bombing from a television news report the evening after the attack.  Ms. Taft later received a telephone call from her sister, Cheryl Pienkowski, informing Ms. Taft that their father was in Beirut and was missing in the attack.  Several days later, Ms. Taft learned that her father's body had been located and identified.  As a result of the bombing, Ms. Taft suffered mental anguish, emotional

pain and suffering, and economic loss, and was deprived of the assistance, society, companionship and solatium of William Sheil.

154.    Janet Lee Stevens, the sister of Plaintiffs Hazen Hadley Stevens, Jo Ann Stevens, and Scott Carlton Stevens, was a journalist working in Beirut, doing freelance work for the Japanese newspaper Asahi as well as contract work for the periodical Monday Morning.  At the time of the bombing, Ms. Stevens was interviewing personnel in the Embassy cafeteria.  Ms. Stevens sustained fatal injuries as a result of the attack.

155.    Plaintiff Jo Ann Stevens is the identical twin sister of Janet Lee Stevens.  Ms. Stevens, who was at work at CNN headquarters in Atlanta the morning of the bombing, first learned of the Embassy attack through information transmitted to CNN.  After returning to her apartment that afternoon, Ms. Stevens received a phone call from her sister's supervisor at Asahi confirming that Janet Lee Stevens had been killed in the attack.  As a result of the bombing, Ms. Stevens suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship and solatium of Janet Lee Stevens.

156.    Plaintiff Hazen Hadley Stevens is the brother of Janet Lee Stevens.  Mr. Stevens heard news reports about the bombing on April 18, but was unaware that his sister was in Beirut generally or at the U.S. Embassy specifically.  The next day, he saw a Washington Times news article indicating that Janet Lee Stevens was believed to have been killed in the attack.  He thereafter contacted his father

and brother Scott Carlton Stevens, who confirmed Janet Lee Stevens' death. As a result of the bombing, Mr. Stevens suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship and solatium of Janet Lee Stevens.

157. Plaintiff Hazen Stevens was the father of Janet Lee Stevens. Mr. Stevens, who ran several business interests at the time, was contacted by officials at Asahi, who indicated that Janet Lee Stevens had been at the U.S. Embassy at the time of the bombing. He was subsequently contacted by various sources, including the U.S. State Department, who confirmed that Janet Lee Stevens had been killed in the attack. As a result of the bombing, Mr. Stevens suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship and solatium of Janet Lee Stevens.

158. Plaintiff Scott Carlton Stevens is the brother of Janet Lee Stevens. Mr. Stevens heard news reports about the Embassy attack on April 18, but was unaware that his sister was in Beirut generally, or at the U.S. Embassy specifically. He later learned, through his father, that Janet Lee Stevens had been killed in the attack. As a result of the bombing, Mr. Stevens suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship and solatium of Janet Lee Stevens.

159. Albert Votaw was posted to the Beirut Embassy as the Director of the Regional Housing and Urban Development office for USAID. He was the husband of Plaintiff Estera Votaw, the father of Plaintiffs Catherine Votaw, Claire Votaw,

Marianne Votaw, and Susan West, and the brother of Plaintiff Gregory Votaw. At
the time of the bombing, Mr. Votaw was eating lunch in the Embassy cafeteria. Mr.
Votaw sustained fatal injuries as a result of the attack.

160.   Plaintiff Estera Votaw is the widow of Albert Votaw. Mrs. Votaw, who
was finalizing the family's affairs in Bangkok, Thailand before joining her husband
in Beirut, was informed of the bombing by the local AID Director on the morning of
April 19. She learned shortly thereafter from friends working for a news service
that her husband's body had been found. As a result of the bombing, Mrs. Votaw
suffered mental anguish, emotional pain and suffering, and economic loss, and was
deprived of the assistance, society, companionship, consortium and solatium of
Albert Votaw.

161.   Plaintiff Catherine Votaw is the daughter of Albert Votaw. Ms. Votaw
learned of the Embassy bombing through a morning news report the day of the
attack, and was informed the following day by her sister, Claire Votaw, that their
father had been killed. As a result of the bombing, Ms. Votaw suffered mental
anguish, emotional pain and suffering, and economic loss, and was deprived of the
assistance, society, companionship and solatium of Albert Votaw.

162.   Plaintiff Claire Votaw is the daughter of Albert Votaw. Ms. Votaw
learned of the bombing from a friend while at work on April 18, and was informed
by State Department personnel the following morning that her father had been
killed. As a result of the bombing, Ms. Votaw suffered mental anguish, emotional

pain and suffering, and economic loss, and was deprived of the assistance, society, companionship and solatium of Albert Votaw.

163.   Plaintiff Marianne Votaw is the daughter of Albert Votaw.  Ms. Votaw, who was a college senior in Medford, Massachusetts at the time of the bombing, was informed of the bombing and her father's death by her sister, Claire Votaw.  As a result of the bombing, Ms. Votaw suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship and solatium of Albert Votaw.

164.   Plaintiff Susan West is the daughter of Albert Votaw.  Ms. West, who was travelling in India at the time of the bombing, learned of the bombing from a local newspaper.  Ms. West was informed the following day by her mother, Estera Votaw, upon her return to Bangkok, that her father had been killed.  As a result of the bombing, Ms. West suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship and solatium of Albert Votaw.

165.   Plaintiff Gregory B. Votaw is the brother of Albert Votaw.  Mr. Votaw, who was working in Cairo, Egypt as leader of a development assistance team under contract to USAID, learned the bombing the evening of April 18 from a friend, and was informed by the U.S. Embassy in Cairo the following day that his brother had been killed.  As a result of the bombing, Mr. Votaw suffered mental anguish, emotional pain and suffering, and economic loss, and was deprived of the assistance, society, companionship and solatium of Albert Votaw.

166.    Plaintiff Rayford Byers was a Chief Warrant Officer 3 serving as a member of the U.S. Army's Mobility Training Group, headquartered in the Beirut Embassy.  Mr. Byers was waiting for the elevator at the time of the bombing, the force of which blew him through a nearby window, from which he fell five stories to the ground.  He suffered multiple injuries, including the loss of his left eye, scraping of the left side of his face, crushing of his head, smashing of his left arm, the breaking of both collarbones, and twisting of his back.  Mr. Byers was initially treated at the American University of Beirut Hospital, where he remained comatose for several days; subsequently treated at the U.S. Army hospital in Weisbaden, Germany; and ultimately treated at Ft. Hood, Texas, where he convalesced for several months and received additional physical and psychological therapy.  He continues to suffer from headaches, back pains, and muscular atrophy.  As a result of the bombing, Mr. Byers suffered physical pain, mental anguish, economic loss, and emotional pain and suffering.

167.    Plaintiff Don Chubb served as a Communications Officer at the Beirut Embassy.  Mr. Chubb, who was on his way to the Embassy cafeteria, was walking from his office towards an elevator at the time of the bombing, the force of which threw him into an adjacent room.  The percussive force of the blast led to hearing loss, as well as a continuous ringing, in Mr. Chubb's ears.  As a result of the bombing, Mr. Chubb suffered physical pain, mental anguish, economic loss, and emotional pain and suffering.

168.    Plaintiff Robert Essington was posted to the Beirut Embassy as the General Services Officer with the U.S. Department of State.  Mr. Essington was in his office at the Embassy at the time of the bombing, the force of which blew him over the desk and onto the floor.  He suffered multiple injuries, including the severing of an ear, multiple lacerations, a severely injured back, and the embedding of approximately 1000 slivers of glass under his skin.  He was initially treated in Beirut.  Mr. Essington's injuries have required four surgeries to date to address recurrent back pain and embedded glass, and he further suffers from tinnitus and gurds, both aggravated by the bombing.  As a result of the bombing, Mr. Essington suffered physical pain, mental anguish, economic loss, and emotional pain and suffering.

169.    Plaintiff Dennis Foster was posted to the Beirut Embassy as a Political Officer with the U.S. Department of State.  Mr. Foster was in his office at the Embassy at the time of the bombing, and suffered multiple injuries, including lacerations to his face and scalp, the embedding of glass under his skin, and internal injuries to his kidneys as a result of the blast.  As a result of the bombing, Mr. Foster suffered physical pain, mental anguish, economic loss, and emotional pain and suffering.

170.    Plaintiff Brian Korn was a Corporal in the Marine Security Guard contingent assigned to protect the Beirut Embassy.  Mr. Korn was asleep in his quarters at the Embassy at the time of the bombing, the force of which threw him from his bed and into his wall locker.  He suffered lacerations on his arm and the

second toe on his left foot was nearly severed.  As a result of the bombing, Mr. Korn suffered physical pain, mental anguish, economic loss, and emotional pain and suffering.

171.   Plaintiff Faith Lee was posted to the Beirut Embassy as a Communications Officer for the U.S. Department of State.  Ms. Lee had just returned from lunch in the Embassy cafeteria and was standing at her desk at the time of the bombing.  In the aftermath of the attack, she and several other individuals attempted to leave the Embassy by climbing through the window onto a shed, and then jumping to the ground.  In so doing, Ms. Lee broke her foot.  As a result of the bombing, Ms. Lee suffered physical pain, mental anguish, economic loss, and emotional pain and suffering.

172.   Plaintiff Charles Light was a Sergeant in the Marine Security Guard contingent assigned to protect the Beirut Embassy.  Mr. Light was standing behind his desk in his first floor office at the time of the bombing, the force of which knocked him unconscious and buried him under chunks of debris.  Doctors later determined that two of his vertebrae had been shattered.  He has subsequently undergone multiple back surgeries, and suffered nerve damage and muscle atrophy. As a result of the bombing, Mr. Light suffered physical pain, mental anguish, and emotional pain and suffering.

173.   Plaintiff Jacques Massengill was a Lance Corporal in the Marine Security Guard contingent assigned to protect the Beirut Embassy.  Mr. Massengill was in his quarters at the Embassy at the time of the bombing.  He suffered

lacerations from flying glass and other debris.  As a result of the bombing, Mr.

Massengill suffered physical pain, mental anguish, economic loss, and emotional

pain and suffering

174.   Plaintiff Dundas McCullough, the husband of Plaintiff Rebecca

McCullough, was a Foreign Service Officer assigned to the Consular Section with

the U.S. Department of State at the Beirut Embassy.  At the time of the bombing,

Mr. McCullough was interviewing non-immigrant visa applicants behind the

counter of the Consular Section's waiting room.  The explosion forced Mr.

McCullough's chin to slam onto the counter, caused a cinder block wall to collapse

onto him and his interpreter, and completely destroyed the consular section.  Mr.

McCullough suffered a hematoma on his ear, multiple lacerations on his face, back,

and hands from flying glass and other debris, and the embedding of glass under his

skin.  Mr. McCullough was initially treated at the American University of Beirut

Hospital, and received subsequent treatment to remove embedded glass from under

his skin.  As a result of the bombing, Mr. McCullough suffered physical pain,

mental anguish, economic loss, and emotional pain and suffering.

175.   Plaintiff Rebecca McCullough, the wife of Plaintiff Dundas

McCullough, was a civilian employee with the Office of Military Cooperation of the

U.S. Department of State at the Beirut Embassy.  Ms. McCullough was sitting at

her office desk at the time of the bombing, the force of which shattered the windows

in her office and wrenched the doors off their hinges.  Ms. McCullough suffered

lacerations from glass and other debris and suffers from Post-Traumatic Stress

Disorder as a result of the attack.  As a result of the bombing, Ms. McCullough

suffered physical pain, mental anguish, economic loss, and emotional pain and

suffering.

176.   Plaintiff Raymond Miller served as a Communications Officer with the

U.S. Department of State at the Beirut Embassy.  Mr. Miller was in an anteroom

near his office at the Embassy at the time of the bombing, the force of which

dislodged various pieces of equipment as well as pieces of debris from the office

walls.  Mr. Miller suffered lacerations and bruises as a result, and has subsequently

suffered from progressive hearing loss resulting from the percussive force of the

blast.  As a result of the bombing, Mr. Miller suffered physical pain, mental

anguish, economic loss, and emotional pain and suffering.

177.   Plaintiff Catherine Nylund served as a Foreign Service Secretary with

the U.S. Department of State at the Beirut Embassy.  Ms. Nylund was in the

Embassy's Political Section at the time of the bombing, the force of which blew a

combination of dust, fine glass and debris into her body.  She suffered lacerations,

particularly around her ear, as a result, and was treated at the American

University of Beirut Hospital.  She has since suffered from recurring ear-related

disorders.  As a result of the bombing, Ms. Nylund suffered physical pain, mental

anguish, economic loss, and emotional pain and suffering.

178.   Plaintiff Robert Pearson was posted to the Beirut Embassy as

Assistant Project Development Officer for the USAID.  Mr. Pearson, who was eating

lunch in the Embassy cafeteria at the time of the bombing, suffered multiple

injuries, including burns, a back injury, and serious lacerations.  He was initially treated at the American University of Beirut Hospital and received subsequent care at Sibley Hospital in Washington, D.C.  As a result of the bombing, Mr. Pearson suffered physical pain, mental anguish, economic loss, and emotional pain and suffering.

179.    Plaintiff Dorothy Pech was posted to the Beirut Embassy as secretary to Deputy Chief of Mission Robert Pugh.  Ms. Pech was transacting business in the Embassy's budget and fiscal section at the time of the bombing, the force of which knocked her to the ground.  She suffered a significant laceration above her left eye as a result of flying debris, for which she was treated at American University of Beirut Hospital.  She subsequently suffered temporary loss of sight in her left eye as a result of the injury.  As a result of the bombing, Ms. Pech suffered physical pain, mental anguish, economic loss, and emotional pain and suffering.

180.    Plaintiff Daniel Pellegrino served as a Naval Intelligence Specialist in the Defense Attache's Office at the Beirut Embassy.  Mr. Pellegrino was in his office at the Embassy at the time of the bombing, the force of which threw him against the wall and showered him with flying glass and other debris.  Mr. Pellegrino suffered multiple injuries, including lacerations to his scalp, face, neck and hands, for which he was treated at the American University of Beirut Hospital.  He also suffered permanent hearing loss and tinnitus, and subsequently suffered from Post-Traumatic Stress Disorder.  As a result of the bombing, Mr. Pellegrino suffered physical pain, mental anguish, economic loss, and emotional pain and suffering.

181.   Plaintiff Leo Pezzi was posted to the Beirut Embassy as a Telecommunications Officer with the Telecommunications Unit of the U.S. Department of State.  Mr. Pezzi was standing just outside of his office at the Embassy supervising the installation of carpet in an adjacent office at the time of the bombing, the force of which threw him across the room.  Mr. Pezzi suffered lacerations and bruises on his arms, and has subsequently suffered progressive hearing loss and continuous ringing in his ears resulting from the percussive force of the blast.  As a result of the bombing, Mr. Pezzi suffered physical pain, mental anguish, economic loss, and emotional pain and suffering.

182.   Plaintiff John Reid was posted to the Beirut Embassy as Counselor of Embassy for Public Affairs by the U.S. Information Agency.  Mr. Reid was sitting at his office desk at the Embassy at the time of the bombing, the force of which threw him to the floor.  Mr. Reid was buried under brick and rubble, and suffered multiple injuries, including lacerations over his face, scalp, and body.  He was subsequently treated at the American University of Beirut Hospital.  As a result of the bombing, Mr. Reid suffered physical pain, mental anguish, economic loss, and emotional pain and suffering.

183.   Plaintiff Beth Samuel was posted to the Beirut Embassy as a secretary for the U.S. Information Service.  Ms. Samuel had just returned to her office in the Embassy at the time of the bombing, the force of which threw her to the floor and knocked her unconscious.  She was buried in debris for a period of time, and suffered multiple lacerations over her face, scalp and upper body, for which she was

treated at the American University of Beirut Hospital.  As a result of the bombing, Ms. Samuel suffered physical pain, mental anguish, economic loss, and emotional pain and suffering.

184.   Plaintiff Ronald Kurt Shafer was posted to the Beirut Embassy as an AID Program Officer.  Mr. Shafer was sitting in his office at the Embassy at the time of the bombing, the force of which threw Mr. Shafer out of his chair.  As a result of the bombing, Mr. Shafer has aversions to stimuli that parallel those associated with the Beirut Embassy bombing, such as bright lights and loud noises, and recurring headaches resulting from this hypersensitivity.  As a result of the bombing, Mr. Shafer suffered physical pain, mental anguish, economic loss, and emotional pain and suffering.

185.   Plaintiff Ronnie Tumolo was a Corporal in the Marine Security Guard contingent assigned to protect the Beirut Embassy.  Mr. Tumolo was eating lunch in the Embassy at the time of the bombing, and suffered multiple lacerations on his face, scalp, and other parts of his body as a result of the blast.  As a result of the bombing, Mr. Tumolo suffered physical pain, mental anguish, economic loss, and emotional pain and suffering.

186.   Plaintiff Andrew Wartell was an Administrative Officer with the U.S. Department of State.  Mr. Wartell was in a washroom in the Embassy at the time of the bombing, the force of which caused the collapse of the washroom's walls and ceilings.  Mr. Wartell suffered multiple injuries as a result of being trapped in the debris for an extended period of time, including a broken right foot, a compression

fracture, and lacerations from flying glass.  He was initially treated at American University of Beirut Hospital; subsequently transferred to the U.S. Army hospital in Weisbaden, Germany; and received follow-up treatment in the United States.  As a result of the bombing, Mr. Wartell suffered physical pain, mental anguish, economic loss, and emotional pain and suffering.

## COUNT I
## WRONGFUL DEATH/SOLATIUM/CONSORTIUM

(Yvonne Ames, Andrew Ames, Kevin Ames, Kristen Ames Brown, Karen Hale, Adrienne Opdyke, Beryl Blacka, Jane Blacka, Thomas H. Blacka, Philip Faraci, Mary Gilden, John Gilden, Lorraine Gilden, Teresa Gilden, Gene Haas, Alexander Haas, Alison Haas, Arlette Johnston, Antoinette Lewis, Mary Lee McIntyre, Margaret McIntyre Matteucci, Andrew McIntyre, Julie McIntyre, Earl McMaugh, Annie Mullins, Cherie Jones, Michael McMaugh, Teresa Hassan, John Sheil, Laura Monday, Carole Person, Cheryl Pienkowski, Elizabeth Sheil, James Sheil, Estate of William Sheil, Jr. by Paul Taylor, Estate Representative, Judith Taft, Jo Ann Stevens, Hazen Hadley Stevens, Estate of Hazen Stevens (by Scott Stevens, Administrator), Scott C. Stevens, Estera Votaw, Catherine Votaw, Claire Votaw, Marianne Votaw, Susan West and Gregory Votaw v. The Islamic Republic of Iran and the Iranian Ministry of Information and Security)

187.   Paragraphs 1 through 186 are incorporated by reference as though fully set forth herein.

188.   On April 18, 1983, members of Hizbollah willfully, violently, and forcefully caused an explosive device to detonate at the United States Embassy in Beirut, Lebanon.

189.   Among those fatally injured as a result of the blast were Robert Ames, Thomas Blacka, Phyliss Faraci, Terry Gilden, Kenneth Haas, Frank Johnston,

James Lewis, Monique Lewis, William McIntyre, Robert McMaugh, William Sheil, Janet Lee Stevens and Albert Votaw, whose estates are represented herein.

190.   As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Plaintiff Yvonne Ames suffered mental anguish, emotional pain and suffering, and economic losses resulting from the death of Robert Ames, and was further deprived of the assistance, society, companionship, consortium and solatium of Robert Ames, entitling Plaintiff to compensatory damages.

191.   As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Plaintiffs Andrew Ames, Kevin Ames, Kristen Ames Brown, Karen Hale and Adrienne Opdyke suffered mental anguish, emotional pain and suffering, and economic losses resulting from the death of Robert Ames, and were further deprived of the assistance, society, companionship, and solatium of Robert Ames, entitling Plaintiffs to compensatory damages.

192.   As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Plaintiff Beryl Blacka suffered mental anguish, emotional pain and suffering, and economic losses resulting from the death of Thomas Blacka, and was further deprived of the assistance, society,

companionship, consortium and solatium of Thomas Blacka, entitling Plaintiff to compensatory damages.

193.   As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Plaintiffs Jane Blacka and Thomas H. Blacka suffered mental anguish, emotional pain and suffering, and economic losses resulting from the death of Thomas Blacka, and were further deprived of the assistance, society, companionship, and solatium of Thomas Blacka, entitling Plaintiffs to compensatory damages.

194.   As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Plaintiff Philip Faraci suffered mental anguish, emotional pain and suffering, and economic losses resulting from the death of Phyliss Faraci, and was further deprived of the assistance, society, companionship, and solatium of Phyliss Faraci, entitling Plaintiff to compensatory damages.

195.   As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Plaintiff Mary Gilden suffered mental anguish, emotional pain and suffering, and economic losses resulting from the death of Terry Gilden and was further deprived of the assistance, society,

companionship, consortium and solatium of Terry Gilden, entitling Plaintiff to compensatory damages.

196.   As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Plaintiffs John Gilden, Lorraine Gilden and Teresa Gilden suffered mental anguish, emotional pain and suffering, and economic losses resulting from the death of Terry Gilden, and were further deprived of the assistance, society, companionship, and solatium of Terry Gilden, entitling Plaintiffs to compensatory damages.

197.   As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Plaintiff Alison Haas suffered mental anguish, emotional pain and suffering, and economic losses resulting from the death of Kenneth Haas, and was further deprived of the assistance, society, companionship, consortium and solatium of Kenneth Haas, entitling Plaintiff to compensatory damages.

198.   As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Plaintiffs Alexander Haas and Gene Haas suffered mental anguish, emotional pain and suffering, and economic losses resulting from the death of Kenneth Haas, and were further deprived of the

assistance, society, companionship, and solatium of Kenneth Haas, entitling Plaintiffs to compensatory damages.

199.   As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Plaintiff Arlette Johnston suffered mental anguish, emotional pain and suffering, and economic losses resulting from the death of Frank Johnston, and was further deprived of the assistance, society, companionship, consortium and solatium of Frank Johnston, entitling Plaintiff to compensatory damages.

200.   As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Plaintiff Antoinette Lewis suffered mental anguish, emotional pain and suffering, and economic losses resulting from the death of James Lewis and was further deprived of the assistance, society, companionship, and solatium of James Lewis, entitling Plaintiff to compensatory damages.

201.   As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Plaintiff Antoinette Lewis suffered mental anguish, emotional pain and suffering, and economic losses resulting from the death of Monique Lewis and was further deprived of the

assistance, society, companionship, and solatium of Monique Lewis, entitling Plaintiff to compensatory damages.

202.   As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Plaintiff Mary Lee McIntyre suffered mental anguish, emotional pain and suffering, and economic losses resulting from the death of William McIntyre, and was further deprived of the assistance, society, companionship, consortium and solatium of William McIntyre, entitling Plaintiff to compensatory damages.

203.   As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Plaintiffs Margaret McIntyre Matteucci, Andrew McIntyre, and Julie McIntyre, suffered mental anguish, emotional pain and suffering, and economic losses resulting from the death of William McIntyre, and were further deprived of the assistance, society, companionship, and solatium of William McIntyre, entitling Plaintiffs to compensatory damages.

204.   As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Plaintiffs Earl McMaugh, Annie Mullins, Cherie Jones, Michael McMaugh, and Teresa Hassan suffered mental anguish, emotional pain and suffering, and economic losses resulting from the death

of Robert McMaugh, and were further deprived of the assistance, society, companionship, and solatium of Robert McMaugh, entitling Plaintiffs to compensatory damages.

205.   As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Plaintiffs John Sheil, Laura Monday, Carole Person, Cheryl Pienkowski, Elizabeth Sheil, James Sheil, William Sheil, Jr., and Judith Taft suffered mental anguish, emotional pain and suffering, and economic losses resulting from the death of William Sheil, and were further deprived of the assistance, society, companionship, and solatium of William Sheil, entitling Plaintiffs to compensatory damages.

206.   As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Plaintiffs Jo Ann Stevens, Hazen Hadley Stevens, Hazen Stevens, and Scott Stevens suffered mental anguish, emotional pain and suffering, and economic losses resulting from the death of Janet Lee Stevens, and were further deprived of the assistance, society, companionship, and solatium of Janet Lee Stevens, entitling Plaintiffs to compensatory damages.

207.   As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Plaintiff Estera Votaw suffered mental anguish, emotional pain and suffering, and economic losses resulting from

the death of Albert Votaw, and was further deprived of the assistance, society, companionship, consortium and solatium of Albert Votaw, entitling Plaintiff to compensatory damages.

208.   As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Plaintiffs Catherine Votaw, Claire Votaw, Marianne Votaw, Susan West and Gregory Votaw suffered mental anguish, emotional pain and suffering, and economic losses resulting from the death of Albert Votaw, and were further deprived of the assistance, society, companionship, and solatium of Albert Votaw, entitling Plaintiffs to compensatory damages.

209.   Under state statutory and / or common law, each Plaintiff may assert a cause of action for wrongful death, consortium, and / or solatium against Defendants in connection with the willful, wrongful, intentional and reckless actions of Hizbollah members.

WHEREFORE, Plaintiffs Yvonne Ames, Andrew Ames, Kevin Ames, Kristen Ames Brown, Karen Hale, Adrienne Opdyke, Beryl Blacka, Jane Blacka, Thomas H. Blacka, Philip Faraci, Mary Gilden, John Gilden, Lorraine Gilden, Teresa Gilden, Gene Haas, Alexander Haas, Alison Haas, Arlette Johnston, Antoinette Lewis, Mary Lee McIntyre, Andrew McIntyre, Julie McIntyre, Margaret McIntyre, Earl McMaugh, Annie Mullins, Cherie Jones, Michael McMaugh, Teresa Hassan, John Sheil,  Laura Monday, Carol Person, Cheryl Pienkowski, Elizabeth Sheil, James Sheil, Estate of William Sheil, Jr. (by Paul Taylor, Estate

Representative), Judith Taft, Jo Ann Stevens, Hazen Hadley Stevens, Hazen Stevens (by Scott Stevens, Administrator), Scott Stevens, Estera Votaw, Catherine Votaw, Claire Votaw, Marianne Votaw, Susan West, and Gregory Votaw demand judgment be entered, jointly and severally, against Defendants the Islamic Republic of Iran and the Iranian Ministry of Information and Security in the amount of $ 1 BILLION DOLLARS ($1,000,000,000.00).

## COUNT II
## BATTERY

(Anne Dammarell, Rayford Byers, Don Chubb, Robert Essington, Dennis Foster, Brian Korn, Faith Lee, Charles Light, Jacques Massengill, Dundas McCullough, Rebecca McCullough, Mary Lee McIntyre, Raymond Miller, Catherine Nylund, Estate of Robert Pearson (by George Saunders, Executor), Dorothy Pech, Daniel Pellegrino, Leo Pezzi, John Reid, Beth Samuel, Ronald Kurt Shafer, Ronnie Tumolo, and Andrew Wartell v. The Islamic Republic of Iran and The Iranian Ministry of Information and Security)

210.   Paragraphs 1 through 209 are incorporated by reference as though fully set forth herein.

211.   On April 18, 1983, members of Hizbollah willfully, violently, and forcefully caused an explosive device to detonate at the United States Embassy in Beirut, Lebanon.

212.   Among those injured as a result of the bombing were Anne Dammarell, Rayford Byers, Don Chubb, Robert Essington, Dennis Foster, Brian Korn, Faith Lee, Charles Light, Jacques Massengill, Dundas McCullough, Rebecca McCullough, Mary Lee McIntyre, Raymond Miller, Catherine Nylund, Robert Pearson, Dorothy Pech, Daniel Pellegrino, Leo Pezzi, John Reid, Beth Samuel, Ronald Kurt Shafer, Ronnie Tumolo, and Andrew Wartell.

213.   The willful, wrongful, intentional, and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, constituted a battery upon Plaintiffs Anne Dammarell, Rayford Byers, Don Chubb, Robert Essington, Dennis Foster, Brian Korn, Faith Lee, Charles Light, Jacques Massengill, Dundas McCullough, Rebecca McCullough, Mary Lee McIntyre, Raymond Miller, Catherine Nylund, Robert Pearson (deceased), Dorothy Pech, Daniel Pellegrino, Leo Pezzi, John Reid, Beth Samuel, Ronald Kurt Shafer, Ronnie Tumolo, and Andrew Wartell, entitling Plaintiffs to compensatory damages for physical pain, mental anguish, and emotional pain and suffering.

214.   Under state statutory and / or common law, each Plaintiff may assert a cause of action for battery against Defendants in connection with the willful, wrongful, intentional and reckless acts of Hizbollah members.

WHEREFORE, Plaintiffs Anne Dammarell, Rayford Byers, Don Chubb, Robert Essington, Dennis Foster, Brian Korn, Faith Lee, Charles Light, Brian Korn, Jacques Massengill, Dundas McCullough, Rebecca McCullough, Mary Lee McIntyre, Raymond Miller, Catherine Nylund, Robert Pearson (by George Saunders, Executor), Dorothy Pech, Daniel Pellegrino, Leo Pezzi, John Reid, Beth Samuel, Ronald Kurt Shafer, Ronnie Tumolo, and Andrew Wartell demand judgment be entered, jointly and severally, against Defendants the Islamic Republic of Iran and the Iranian Ministry of Information and Security in the amount of $ 1 BILLION DOLLARS ($1,000,000,000.00).

## COUNT III
## SURVIVAL DAMAGES

(Estate of Robert Ames, by Yvonne Ames, Administrator; Estate of Thomas Blacka, by Beryl Blacka, Personal Representative; Estate of Phyliss Faraci, by Philip Faraci, Administrator; Estate of Terry Gilden, by Mary Gilden, Administrator; Estate of Kenneth Haas, by Gene Haas, Executor; Estate of Frank Johnston, by Arlette Johnston, Administrator; Estate of James Lewis, by Antoinette Lewis and Gregory Rupert, Co-Administrators; Estate of Monique Lewis, by Antoinette Lewis and Gregory Rupert, Co-Administrators; Estate of William McIntyre, by Mary Lee McIntyre, Executrix; Estate of Robert McMaugh, by Earl McMaugh and Annie Mullins, Co-Administrators; Estate of William Sheil, by John Sheil, Administrator; Estate of Janet Lee Stevens, by Jo Ann Stevens, Administrator; and Estate of Albert Votaw, by Estera Votaw, Executrix v. The Islamic Republic of Iran and The Iranian Ministry of Information and Security)

215.   Paragraphs 1 through 214 are incorporated by reference as though fully set forth herein.

216.   On April 18, 1983, members of Hizbollah willfully, violently, and forcefully caused an explosive device to detonate at the United States Embassy in Beirut, Lebanon.

217.   Among those fatally injured as a result of the blast were Robert Ames, Thomas Blacka, Phyliss Faraci, Terry Gilden, Kenneth Haas, Frank Johnston, James Lewis, Monique Lewis, William McIntyre, Robert McMaugh, William Sheil, Janet Lee Stevens and Albert Votaw, whose estates are represented herein.

218.   As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Robert Ames suffered physical pain, emotional pain and suffering, mental anguish, and economic losses, entitling the Estate of Robert Ames to compensatory damages.

219.   As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Thomas Blacka suffered physical pain, emotional pain and suffering, mental anguish, and economic losses, entitling the Estate of Thomas Blacka to compensatory damages.

220.   As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Phyliss Faraci suffered physical pain, emotional pain and suffering, mental anguish, and economic losses, entitling the Estate of Phyliss Faraci to compensatory damages.

221.   As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Terry Gilden suffered physical pain, emotional pain and suffering, mental anguish, and economic losses, entitling the Estate of Terry Gilden to compensatory damages.

222.   As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Kenneth Haas suffered physical pain, emotional pain and suffering, mental anguish, and economic losses, entitling the Estate of Kenneth Haas to compensatory damages.

223.   As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the

Islamic Republic of Iran through its agent MOIS, Frank Johnston suffered physical pain, emotional pain and suffering, mental anguish, and economic losses, entitling the Estate of Frank Johnston to compensatory damages.

224.   As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, James Lewis suffered physical pain, emotional pain and suffering, mental anguish, and economic losses, entitling the Estate of James Lewis to compensatory damages.

225.   As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Monique Lewis suffered physical pain, emotional pain and suffering, mental anguish, and economic losses, entitling the Estate of Monique Lewis to compensatory damages.

226.   As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, William McIntyre suffered physical pain, emotional pain and suffering, mental anguish, and economic losses, entitling the Estate of William McIntyre to compensatory damages.

227.   As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Robert McMaugh suffered

physical pain, emotional pain and suffering, mental anguish, and economic losses, entitling the Estate of Robert McMaugh to compensatory damages.

228.   As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, William Sheil suffered physical pain, emotional pain and suffering, mental anguish, and economic losses, entitling the Estate of William Sheil to compensatory damages.

229.   As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Janet Lee Stevens suffered physical pain, emotional pain and suffering, mental anguish, and economic losses, entitling the Estate of Janet Lee Stevens to compensatory damages.

230.   As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Albert Votaw suffered physical pain, emotional pain and suffering, mental anguish, and economic losses, entitling the Estate of Albert Votaw to compensatory damages.

231.   Under state statutory and / or common law, a cause of action may be asserted on behalf of each estate seeking survival damages against Defendants in connection with the willful, wrongful, intentional and reckless actions of Hizbollah members.

WHEREFORE the Estate of Robert Ames, by Yvonne Ames, Administrator; Estate of Thomas Blacka, by Beryl Blacka, Personal Representative; Estate of Phyliss Faraci, by Philip Faraci, Administrator; Estate of Terry Gilden, by Mary Gilden, Administrator; Estate of Kenneth Haas, by Gene Haas, Executor; Estate of Frank Johnston, by Arlette Johnston, Administrator; Estate of James Lewis, by Antoinette Lewis and Gregory Rupert, Co-Administrators; Estate of Monique Lewis, by Antoinette Lewis and Gregory Rupert, Co-Administrators; Estate of William McIntyre, by Mary Lee McIntyre, Executrix; Estate of Robert McMaugh, by Earl McMaugh and Annie Mullins, Co-Administrators; Estate of William Sheil, by John Sheil, Administrator; Estate of Janet Lee Stevens, by Jo Ann Stevens, Administrator; and Estate of Albert Votaw, by Estera Votaw, Executrix, demand that judgment be entered, jointly and severally, against the Defendants the Islamic Republic of Iran and the Iranian Ministry of Information and Security, in the amount of $1 BILLION DOLLARS ($1,000,000,000.00).

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(Anne Dammarell, Yvonne Ames, Andrew Ames, Kevin Ames, Kristen Ames Brown, Karen Hale, Adrienne Opdyke, Beryl Blacka, Jane Blacka, Thomas H. Blacka, Philip Faraci, Mary Gilden, John Gilden, Lorraine Gilden, Teresa Gilden, Gene Haas, Alexander Haas, Alison Haas, Arlette Johnston, Antoinette Lewis, Mary Lee McIntyre, Margaret McIntyre Matteucci, Andrew McIntyre, Julie McIntyre, Earl McMaugh, Annie Mullins, Cherie Jones, Michael McMaugh, Teresa Hassan, John Sheil, Laura Monday, Carole Person, Cheryl Pienkowski, Elizabeth Sheil, James Sheil, Estate of William Sheil, Jr (by Paul Taylor, Estate Representative), Judith Taft, Jo Ann Stevens, Hazen Hadley Stevens, Estate of Hazen Stevens (by Scott Stevens, Administrator), Scott Stevens, Estera Votaw, Catherine Votaw, Claire Votaw, Marianne Votaw, Susan West, Gregory Votaw, Rayford Byers, Don Chubb, Robert Essington, Dennis Foster, Brian Korn, Faith Lee, Charles Light, Jacques Massengill, Dundas McCullough, Rebecca McCullough, Raymond Miller, Catherine

Nylund, Estate of Robert Pearson (by George Saunders, Executor), Dorothy Pech, Daniel Pellegrino, Leo Pezzi, John Reid, Beth Samuel, Ronald Kurt Shafer, Ronnie Tumolo, and Andrew Wartell v. The Islamic Republic of Iran and The Iranian Ministry of Information and Security)

232.    Paragraphs 1 through 231 are incorporated by reference as though fully set forth herein.

233.    On April 18, 1983, members of Hizbollah willfully, violently, and forcefully caused an explosive device to detonate at the United States Embassy in Beirut, Lebanon.

234.    The act of detonating an explosive charge at the U.S. Embassy in Lebanon constituted extreme and outrageous conduct on the part of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS.

235.    As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Plaintiffs Anne Dammarell, Yvonne Ames, Andrew Ames, Kevin Ames, Kristen Ames Brown, Karen Hale, Adrienne Opdyke, Beryl Blacka, Jane Blacka, Thomas H. Blacka, Philip Faraci, Mary Gilden, John Gilden, Lorraine Gilden, Teresa Gilden, Gene Haas, Alexander Haas, Alison Haas, Arlette Johnston, Antoinette Lewis, Mary Lee McIntyre, Andrew McIntyre, Julie McIntyre, Margaret McIntyre, Earl McMaugh, Annie Mullins, Cherie Jones, Michael McMaugh, Teresa Hassan, John Sheil, Laura Monday, Carole Person, Cheryl Pienkowski, Elizabeth Sheil, James Sheil, Estate of William Sheil, Jr. (by Paul Taylor, Estate Representative), Judith Taft, Jo Ann

Stevens, Hazen Hadley Stevens, Estate of Hazen Stevens (by Scott Stevens,

Administrator), Scott Stevens, Estera Votaw, Catherine Votaw, Claire Votaw,

Marianne Votaw, Susan West, Gregory Votaw, Rayford Byers, Don Chubb, Robert

Essington, Dennis Foster, Brian Korn, Faith Lee, Charles Light, Jacques

Massengill, Dundas McCullough, Rebecca McCullough, Raymond Miller, Catherine

Nylund, Estate of Robert Pearson (by George Saunders, Executor), Dorothy Pech,

Daniel Pellegrino, Leo Pezzi, John Reid, Beth Samuel, Ronald Kurt Shafer, Ronnie

Tumolo, and Andrew Wartell were caused to suffer severe emotional distress,

entitling Plaintiffs to compensatory damages.

236.   Under state statutory and / or common law, each Plaintiff may assert a

cause of action for intentional infliction of emotional distress against Defendants in

connection with the willful, wrongful, intentional and reckless actions of Hizbollah

members.

WHEREFORE, Plaintiffs Anne Dammarell, Yvonne Ames, Andrew Ames,

Kevin Ames, Kristen Ames Brown, Karen Hale, Adrienne Opdyke, Beryl Blacka,

Jane Blacka, Thomas H. Blacka, Philip Faraci, Mary Gilden, John Gilden, Lorraine

Gilden, Teresa Gilden, Gene Haas, Alexander Haas, Alison Haas, Arlette Johnston,

Antoinette Lewis, Mary Lee McIntyre, Margaret McIntyre Matteucci, Andrew

McIntyre, Julie McIntyre, Earl McMaugh, Annie Mullins, Cherie Jones, Michael

McMaugh, Teresa Hassan, John Sheil, Laura Monday, Carole Person,  Cheryl

Pienkowski, Elizabeth Sheil, James Sheil, Estate of William Sheil, Jr. (by Paul

Taylor, Estate Representative), Judith Taft, Jo Ann Stevens, Hazen Hadley

Stevens, Estate of Hazen Stevens (by Scott Stevens, Administrator), Scott Stevens,

Estera Votaw, Catherine Votaw, Claire Votaw, Marianne Votaw, Susan West,

Gregory Votaw, Rayford Byers, Don Chubb, Robert Essington, Dennis Foster, Brian

Korn, Faith Lee, Charles Light, Jacques Massengill, Dundas McCullough, Rebecca

McCullough, Raymond Miller, Catherine Nylund, Estate of Robert Pearson (by

George Saunders, Executor), Dorothy Pech, Daniel Pellegrino, Leo Pezzi, John Reid,

Beth Samuel, Ronald Kurt Shafer, Ronnie Tumolo, and Andrew Wartell demand

that judgment be entered, jointly and severally, against the Defendants the Islamic

Republic of Iran and the Iranian Ministry of Information and Security, in the

amount of $ 1 BILLION DOLLARS ($1,000,000,000.00).

## COUNT V
## ECONOMIC DAMAGES

(Anne Dammarell, Rayford Byers, Don Chubb, Robert Essington, Dennis Foster,
Brian Korn, Faith Lee, Charles Light, Jacques Massengill, Dundas McCullough,
Rebecca McCullough, Mary Lee McIntyre, Raymond Miller, Catherine Nylund,
Estate of Robert Pearson (by George Saunders, Executor), Dorothy Pech, Daniel
Pellegrino, Leo Pezzi, John Reid, Beth Samuel, Ronald Kurt Shafer, Ronnie Tumolo,
and Andrew Wartell v. The Islamic Republic of Iran and The Iranian Ministry of
Information and Security)

237.   Paragraphs 1 through 236 are incorporated by reference as though

fully set forth herein.

238.   On April 18, 1983, members of Hizbollah willfully, violently, and

forcefully caused an explosive device to detonate at the United States Embassy in

Beirut, Lebanon.

239.   Among those injured as a result of the bombing were Anne Dammarell,

Rayford Byers, Don Chubb, Robert Essington, Dennis Foster, Brian Korn, Faith

Lee, Charles Light, Jacques Massengill, Dundas McCullough, Rebecca McCullough, Mary Lee McIntyre, Raymond Miller, Catherine Nylund, Robert Pearson, Dorothy Pech, Daniel Pellegrino, Leo Pezzi, John Reid, Beth Samuel, Ronald Kurt Shafer, Ronnie Tumolo, and Andrew Wartell.

240.   As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Plaintiffs Anne Dammarell, Rayford Byers, Don Chubb, Robert Essington, Dennis Foster, Brian Korn, Faith Lee, Charles Light, Jacques Massengill, Dundas McCullough, Rebecca McCullough, Mary Lee McIntyre, Raymond Miller, Catherine Nylund, Robert Pearson (deceased), Dorothy Pech, Daniel Pellegrino, Leo Pezzi, John Reid, Beth Samuel, Ronald Kurt Shafer, Ronnie Tumolo, and Andrew Wartell incurred economic losses, entitling Plaintiffs to compensatory damages.

241.   Under state statutory and / or common law, each Plaintiff may assert a cause of action for economic damages against Defendants in connection with the willful, wrongful, intentional and reckless actions of Hizbollah members.

WHEREFORE Anne Dammarell, Rayford Byers, Don Chubb, Robert Essington, Dennis Foster, Brian Korn, Faith Lee, Charles Light, Jacques Massengill, Dundas McCullough, Rebecca McCullough, Mary Lee McIntyre, Raymond Miller, Catherine Nylund, Estate of Robert Pearson (by George Saunders, Executor), Dorothy Pech, Daniel Pellegrino, Leo Pezzi, John Reid, Beth Samuel, Ronald Kurt Shafer, Ronnie Tumolo, and Andrew Wartell demand that judgment be

entered, jointly and severally, against the Defendants the Islamic Republic of Iran and the Iranian Ministry of Information and Security, in the amount of $ 1BILLION DOLLARS ($1,000,000,000.00).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court grant Plaintiffs judgment in their favor and against Defendants on Counts I through V and grant Plaintiffs:

A.    Compensatory damages against Defendants the Islamic Republic of Iran and the Iranian Ministry of Information and Security, jointly and severally, in the amount of $5 BILLION DOLLARS ($5,000,000,000.00);

B.    Reasonable costs and expenses;

C.    Reasonable attorneys' fees; and

Such other and further relief which the Court may determine to be just and equitable under the circumstances.


Dated:  May  23 2005                    Respectfully submitted,



                                        _____
                                        Stuart H. Newberger, D.C. Bar No. 294793
                                        Michael L. Martinez, D.C. Bar No. 347310

                                        CROWELL & MORING LLP
                                        1001 Pennsylvania Avenue, N.W.
                                        Washington, D.C. 20004-2595
                                        (202) 624-2500 telephone
                                        (202) 628-5116 facsimile

                                        *Attorneys for Plaintiffs*