# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ANNE DAMMARELL, et al.,

    Plaintiffs,

    v.

ISLAMIC REPUBLIC OF IRAN, et al.,

    Defendants.

Civil Action No. 01-2224 (JDB)

## FINAL JUDGMENT ORDER

Twenty-three years ago, on April 18, 1983, Shi'ite Muslim militants attacked the United States Embassy in Beirut, Lebanon, killing sixty-three people (among them seventeen American citizens) and injuring scores of others in an unprecedented assault on a U.S. diplomatic compound. Three years ago, this Court ruled, as a factual matter, that the government of the Islamic Republic of Iran and its Ministry of Intelligence and Security (hereinafter collectively "Iran") had orchestrated, funded, and directed the bombing through its agents and co-conspirators who were affiliated with the terrorist organization now known as Hizbollah. See Dammarell v. Islamic Republic of Iran, 281 F. Supp. 2d 105 (D.D.C. 2003) ("Dammarell I").[1] Last year, this Court held that U.S. victims of the embassy attack (including family members of those killed) were entitled to pursue claims for damages against Iran, based on the laws of their home states, in light of a 1996 amendment to the Foreign Sovereign Immunities Act ("FSIA") that revoked

---

[1] Although the legal conclusions of Dammarell I have been superceded by subsequent opinions, the factual findings are undisturbed, and indeed were expressly incorporated by reference in a more recent opinion and order. See Dammarell v. Islamic Republic of Iran, 404 F. Supp. 2d 261, 274 (D.D.C. 2005) ("Dammarell IV").

jurisdictional protection for terrorist-sponsoring governments, see Dammarell v. Islamic Republic of Iran, No. 01-CV-2224, 2005 WL 756090 (D.D.C. May 12, 2005) ("Dammarell II"), and the Court subsequently awarded $126,061,657 in such damages to twenty-nine of those victims, see Dammarell IV, 404 F. Supp. 2d at 324.  This group of twenty-nine plaintiffs ("the Phase I plaintiffs") consisted of the relatives and estates of four individuals who were killed in the embassy attack as well as seven individuals who were injured in the bombing.  The claims of the remaining plaintiffs ("the Phase II plaintiffs") were referred to Magistrate Judge John Facciola, who was appointed as a Special Master for the purpose of receiving evidence on damages and then issuing proposed findings of fact and conclusions of law with respect to their claims.

Now before the Court for action is the Special Master's extensive Report and Recommendation, which was docketed on August 17, 2006, and supplemented at plaintiffs' request on September 1, 2006.  The time period for lodging objections to the Report and Recommendation set forth in Rule 53 of the Federal Rules of Civil Procedure has elapsed, with no objections being filed.  See Fed. R. Civ. P. 53(g)(2).  Having carefully reviewed the findings and conclusions contained in that report and having considered the recommended disposition of each of the claims therein in light of the Phase I judgment order and the law of the case, the Court will adopt in full the Special Master's Report and Recommendation, as supplemented, as the findings and conclusions of the Court with respect to the Phase II plaintiffs.  Based upon that adoption, the Court will, by this Order, enter final judgment by default against the defendants in the amount of $316,919,657, which includes the amounts already awarded by the Phase I judgment order of

December 14, 2005.[2]

Today thus marks the culmination of this civil action and represents a significant achievement for all of the victims who -- unbowed by the personal tragedies they suffered as a result of the Beirut embassy bombing and the decades of physical and emotional pain that ensued, and undaunted by the largely uncharted legal terrain they had to traverse -- persisted in their efforts to expose Iran as a perpetrator of this brutality and to compel reparations for the enormous harm wrought by its malignant actions.[3]  But while the litigation is brought to a close by this final judgment, it of course cannot end the pain and agony that the victims have suffered and will continue to endure because of the unconscionable acts of Iran and Hizbollah.

For the foregoing reasons, and based upon the entire record, it is this <u>7th</u> day of <u>September</u>, 2006, hereby

---

[2] When the awards in this case are combined with the award issued last year pursuant to a default judgment against Iran in a related case, <u>see</u> Salazar v. Islamic Republic of Iran, 370 F. Supp. 2d 105, 117 (D.D.C. 2005) (awarding $18,297,000 to Donna K. Salazar, the widow of Army Staff Sergeant Mark E. Salazar), this Court has awarded damages totaling more than a third of a billion dollars ($335,216,657) to the families of fourteen U.S. citizens killed in the Beirut embassy bombing and twenty-three U.S. citizens who were injured in the attack.  These awards encompass both economic damages, as estimated by experts and adjusted to reflect present value, and non-economic damages (e.g., compensation for physical pain and suffering and mental anguish), as determined by the Court or Special Master.  In setting the nominal value of the non-economic awards for the Phase I plaintiffs and adopting the non-economic awards recommended by the Special Master for the Phase II plaintiffs, the Court took account of the fact that the awards are intended to compensate for injuries sustained over the course of more than two decades -- and, therefore, that the nominal value attached to such injuries should reflect interest and compounding over time.  By way of comparison, the expert calculations of economic damages applied a conservative annual interest rate of 7.33 percent, based on a twenty-one-year historical average for the 10-Year Treasury Bill.  The Court believes that any assessment of the real value of the non-economic awards must take into consideration that time factor.

[3] This litigation has consumed the time of numerous attorneys over the course of nearly five years and has generated reams of evidence and briefing on countless legal issues -- not to mention judicial opinions that exceed 650 pages in volume.

**ORDERED, ADJUDGED, AND DECREED** that the Special Master's Report and Recommendation of August 17, 2006, as supplemented, is accepted and adopted in full.  It is further

**ORDERED, ADJUDGED, AND DECREED** that the findings of fact contained in the Court's memorandum opinions of September 8, 2003, and December 14, 2005, and the Special Master's Report and Recommendation of August 17, 2006, as supplemented, establish the right to relief of each plaintiff for whom judgment by default is entered.  See 28 U.S.C. § 1608(e) ("No judgment by default shall be entered ... against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court.").  It is further

**ORDERED, ADJUDGED, AND DECREED** that final judgment by default is **ENTERED** against defendants, jointly and severally, and in favor of the Phase I plaintiffs, the Estate of Robert Ames, by Yvonne Ames, Administrator; Rayford Byers; Anne Dammarell; Robert Essington; Charles Light; Mary Lee McIntyre; the Estate of William McIntyre, by Mary Lee McIntyre, Executrix; the Estate of Robert McMaugh, by Earl McMaugh and Annie Mullins, Co-Administrators; Dorothy Pech; Daniel Pellegrino; the Estate of Janet Lee Stevens, by Jo Ann Stevens, Administrator; Jo Ann Stevens; Hazen H. Stevens; Scott C. Stevens; and the Estate of Hazen Stevens, by Scott Stevens, Administrator; in the amount of $126,061,657, divided in the manner specified in the Judgment Order of December 14, 2005.  See Fed. R. Civ. P. 54(b) (specifying that, absent an express determination to the contrary, orders entering judgment as to fewer than all the claims or parties become final upon entry of judgment adjudicating all the claims and the rights and liabilities of all parties).  All Phase I awards to estates shall be allocated

to appropriate beneficiaries by the estate's legal representative in a manner consistent with the Court's Memorandum Opinion of December 14, 2005, and in accordance with applicable law.  All Phase I awards are based on cash value as of March 1, 2003, and any post-judgment interest thereon shall accrue from that date.  And it is further

**ORDERED, ADJUDGED, AND DECREED** that final judgment by default is **ENTERED** against defendants, jointly and severally, and in favor of the Phase II plaintiffs, Dundas McCullough; Rebecca McCollough; Catherine Nylund; Beryl Blacka; Thomas Blacka, Jr.; Jane Blacka; Beth Samuel; Faith Lee; Brian Korn; Philip Faraci; the Estate of Nancy Phyllis Faraci, by Philip Faraci, Administrator; Dennis Foster; Jacques Massengill; Ronnie Tumolo; the Estate of Kenneth Haas, by Gene Haas, Executor; the Estate of Robert Pearson, by George Saunders, Representative; Gregory Votaw; the Estate of Albert Votaw, by Estera Votaw, Administrator; the Estate of Frank Johnston, by Arlette Johnston, Administrator; the Estate of James Lewis, by Antoinette Lewis, Administrator; the Estate of Monique Lewis, by Antoinette Lewis, Administrator; the Estate of William Sheil, by John Sheil, Administrator; the Estate of William Sheil, Jr., by Paul G. Taylor, Executor; Don Chubb; Raymond Miller; Leo Pezzi; John Reid; R. Kurt Shafer; Andrew Wartell; the Estate of Terry Gilden, by Mary Gilden, Executrix; John Gilden; and Lorraine Gilden; in the amount of $190,858,000, divided as follows:

| | |
|---|---|
| Dundas McCullough | $1,460,000 |
| Rebecca McCollough | $1,716,000 |
| Catherine Nylund | $750,000 |
| Beryl Blacka | $11,080,000 |
| Thomas Blacka, Jr. | $5,360,000 |
| Jane Blacka | $5,000,000 |

| | |
|---|---:|
| Beth Samuel | $750,000 |
| Faith Lee | $750,000 |
| Brian Korn | $2,198,000 |
| Philip Faraci | $2,500,000 |
| Estate of Nancy Phyllis Faraci, by Philip Faraci, Administrator | $777,000 |
| Dennis Foster | $1,500,000 |
| Jacques Massengill | $750,000 |
| Ronnie Tumolo | $857,000 |
| Estate of Kenneth Haas, by Gene Haas, Executor | $20,693,000 |
| Estate of Robert Pearson, by George Saunders, Representative | $5,208,000 |
| Gregory Votaw | $2,500,000 |
| Estate of Albert Votaw, by Estera Votaw, Administrator | $30,000,000 |
| Estate of Frank Johnston, by Arlette Johnston, Administrator | $11,008,000 |
| Estate of James Lewis, by Antoinette Lewis, Administrator | $7,379,000 |
| Estate of Monique Lewis, by Antoinette Lewis, Administrator | $2,680,000 |
| Estate of William Sheil, by John Sheil, Administrator | $36,669,000 |
| Estate of William Sheil, Jr., by Paul G. Taylor, Executor | $5,000,000 |
| Don Chubb | $750,000 |
| Raymond Miller | $750,000 |
| Leo Pezzi | $964,000 |
| John Reid | $750,000 |

| | |
|---|---:|
| R. Kurt Shafer | $750,000 |
| Andrew Wartell | $6,405,000 |
| Estate of Terry Gilden, by Mary Gilden, Executrix | $16,904,000 |
| John Gilden | $3,500,000 |
| Lorraine Gilden | $3,500,000 |

All Phase II awards to estates shall be allocated to appropriate beneficiaries by the estate's legal representative in a manner consistent with the Special Master's Report and Recommendation of August 17, 2006, as supplemented, and in accordance with applicable law.  All Phase II awards are based on cash value as of January 1, 2004, and any post-judgment interest thereon shall accrue from that date.

 The Clerk of the Court shall enter this final judgment forthwith.

 It is **SO ORDERED**.

        /s/ John D. Bates
        JOHN D. BATES
      United States District Judge


Copies to:

Stuart Henry Newberger
Michael Lee Martinez
Monica Glynn Parham
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004-2595
Email: snewberger@crowell.com
Email: mmartinez@crowell.com
Email: mparham@crowell.com

 *Counsel for plaintiffs*